J-S87023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAMIAN MICHAELO HICKS | |
| Appellant | No. 734 MDA 2016 |

Appeal from the Judgment of Sentence Dated January 22, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003528-2015

BEFORE:  LAZARUS, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                **FILED JANUARY 26, 2017**

Appellant Damian Michaelo Hicks appeals from the judgment of sentence imposed after he was convicted of criminal use of a communication facility, possession of a controlled substance, delivery of a controlled substance, and possession of drug paraphernalia.[1] We affirm.

In late 2014, Montgomery County Detective James Wood, a member of the narcotics enforcement team, began investigating a suspected drug dealer known as "Joey." Detective Wood had three phone numbers for Joey, and communicated with Joey by text message and phone calls to those numbers. Through text messages, Detective Wood told Joey about a friend

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 7512; 35 P.S. § 780-113(a)(16), (30), and (32).

(undercover Trooper Daniel Reed) who was interested in buying methamphetamine. On January 28, 2015, Detective Wood and Joey exchanged the following messages:

**Jan 28, 2015, 9:29 AM**

[Joey:]      Did you talk to your boy[2]

[Wood:]     He will be good around 3 or 4

[Joey:]      Ok hes gonna have to come to me

[Wood:]     I will tell him

[Joey:]      Ok

**Jan 28, 2015, 3:46 PM**

[Joey:]      Yo ur boy didnt call me

**Jan 28, 2015, 4:03 PM**

[Wood:]     I called him

[Joey:]      I hope his official and good money

[Wood:]     Absolutely! Treat him good and good money will follow

[Joey:]      Ok

**Jan 28, 2015, 4:21 PM**

[Joey:]      Please dude i hope this aint no setup i got kids and a famiky bro just please dnt do it to me if it is bro ima trust you

---

[2] Detective Wood testified that this was a reference to Trooper Reed. N.T., 1/7/16, at 32.

[Wood:]      No way dude. My boy is doing you a favor. He justs want a little for his efforts. And can be a good customer

N.T., 1/7/16, at 28-34; Ex. C-1 at 9-11 (typos in original).

That same day, through text messages and phone calls, Trooper Reed arranged to meet Joey in the parking lot of a Walmart in Berks County to buy 2 grams of crystal methamphetamine. N.T., 1/8/16, at 107-08. At approximately 4:30 p.m., surveillance officers saw Appellant leave his house at 1102 North Front Street in Reading, Pennsylvania, and drive his black Mitsubishi Galant to the Walmart parking lot. N.T., 1/7/16, at 80-85. Trooper Reed, who had been waiting in the parking lot, got out of his car and entered Appellant's. Trooper Reed introduced himself as "D." Appellant responded, "my name is D too, a lot of people call me Joey." Appellant handed Trooper Reed a baggie of powder. Trooper Reed, who was expecting crystals, not powder,[3] complained. Appellant replied, "sorry man, it's my shake."[4] After persuading Appellant to lower the price, Trooper Reed gave Appellant $210 in exchange for the powder. Trooper Reed discussed buying larger quantities of methamphetamine from Appellant if his customers liked this sample. N.T.,

_____

[3] The powder form indicated that the methamphetamine had been cut, or diluted, with another substance. N.T., 1/8/16, at 111-12.

[4] "Shake" refers to a drug that is not pure. N.T., 1/7/16, at 38; 1/8/16, at 112.

1/8/16, at 108-15. The powder Appellant sold Trooper Reed was later tested and determined to contain methamphetamine. N.T, 1/7/16, at 36.

Later the same day, Joey and Detective Wood exchanged the following text messages:

[Joey:]     Jim you sure your boy is good? Just a little nervous

[Wood:]     Yeah he's great. He was nervous too. He said what you gave him looked like all shake though

[Joey:]     Down to the last of the batch of that

[Wood:]     I know but you know how first impressions are!

[Joey:]     Not even worried about that dude i always have good shit and for the crazy low price so hopefully we can start business up that way

[Wood:]     As long as its not all cut to hell. I want fire!![5]

[Joey:]     I got you dude trust me

N.T., 1/7/16, at 38-39; Ex. C-1 at 12-13.

Police did not arrest Appellant immediately after the January 28, 2015 transaction because the amount of methamphetamine involved was small. They planned to arrange a larger purchase from Appellant before arresting him. They set up such a transaction in June of 2015, but it was never completed. Appellant was arrested after that failed transaction. N.T., 1/7/16, at 45-47, 56-58.

_____

[5] "Fire" refers to a pure form of the drug. N.T., 1/7/16, at 39.

Following a jury trial on January 7-8, 2016, Appellant was convicted of criminal use of a communication facility, possession of a controlled substance, delivery of a controlled substance, and possession of drug paraphernalia. The jury found Appellant not guilty of attempted delivery of a controlled substance, a charge related to the June 2015 failed transaction. On January 22, 2016, the trial court sentenced Appellant to consecutive terms of incarceration of 18 months to 5 years for delivery of a controlled substance, and 9 months to 3 years for criminal use of a communication facility.

On January 29, 2016, Appellant, *pro se*, filed a petition to remove counsel and represent himself. On February 1, 2016, Appellant filed a *pro se* post-sentence motion, alleging that his trial counsel was ineffective and that the trial court "erroneously sentenced [Appellant] to [an] aggravated sentence without stating any reason or reasons for such a sentence." Post-Sentence Mot., 2/1/16. On March 1, 2016, Appellant's trial counsel filed a motion to withdraw, citing Appellant's desire that he withdraw in light of Appellant's ineffective assistance of counsel allegations. On March 2, 2016, the trial court granted trial counsel's motion to withdraw and appointed new counsel. On April 26, 2016, after a hearing at which Appellant's new counsel

appeared and argued for Appellant, the trial court denied Appellant's *pro se* post-sentence motion.[6] Appellant filed a timely notice of appeal.

In this counseled appeal, Appellant raises the following issues:

A. Whether the evidence presented at trial was insufficient as a matter of law wherein the Commonwealth's evidence presented at trial failed to establish that the defendant made any telephonic communication, as there was no surveillance, phone records, nor text verifications that the defendant was ever on the other line of the telephone?

B. Whether the verdict was against the weight of the evidence wherein the verdict is so contrary to evidence and shocks one's sense of justice where the Commonwealth's evidence presented at trial failed to establish that the defendant made any telephonic communication, as there was no surveillance, phone recordings, nor text verifications that the defendant was ever on the other line of the telephone?

C. Whether the court's sentence was illegal, unconstitutional[,] and cruel and unusual wherein the sentence extended beyond the statutory guidelines and was unreasonably excessive?

Appellant's Brief at 4.

_____

[6] Usually, a *pro se* motion filed while a defendant is represented by counsel is considered a legal nullity. **See Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa. Super.), **appeal denied**, 936 A.2d 40 (Pa. 2007). Here, although Appellant filed his *pro se* post-sentence motion while represented by counsel, he had previously filed a motion to remove counsel and represent himself. Moreover, by the time the trial court appointed new counsel, the period for filing a post-sentence motion had expired. Under these circumstances, the trial court did not err in considering the *pro se* motion. **See Commonwealth v. Leatherby**, 116 A.3d 73, 79 (Pa. Super. 2015) (*pro se* post-sentence motion not a legal nullity where trial counsel did not file one and court did not appoint new counsel until after filing deadline).

## Sufficiency of the Evidence

Appellant claims that the evidence was insufficient to prove criminal use of a communication facility.[7] Specifically, he argues that there was insufficient evidence identifying him as the person who used the phone.

Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Hennigan***, 753 A.2d 245, 253 (Pa. Super. 2000) (quoting ***Commonwealth v. Vetrini***, 734 A.2d 404, 406-07 (Pa. Super. 1999) (citations, quotation marks, and brackets omitted)).

Criminal use of communication facility is defined by statute:

_____

[7] He does not challenge the sufficiency of the evidence with respect to the other crimes of which he was convicted.

> A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under . . . The Controlled Substance, Drug, Device and Cosmetic Act [35 P.S. §§ 780-101 *et seq.*]. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S. § 7512(a) (footnote omitted). A telephone is a "communication facility." *Id.* § 7512(c).

Appellant relies on **Commonwealth v. Moss**, 852 A.2d 374 (Pa. Super. 2004), in which three defendants challenged the sufficiency of the evidence to support their convictions for criminal use of a communication facility. In **Moss**, we held that the crime has three elements: (1) knowing and intentional use of a communication facility; (2) knowing, intentional, or reckless facilitation of an underlying felony; and (3) occurrence of the underlying felony. *Id.* at 382. We further held that having a drug-related conversation with a known drug trafficker, by itself, was insufficient to support a conviction. *Id.* at 384. There must also be evidence that the "conversations facilitated a specific underlying felony that was in fact carried out." *Id.*

Here, Appellant does not dispute that a felony (delivery of a controlled substance) was actually carried out. Instead, Appellant contends that the evidence was insufficient to prove that he participated in the phone calls and text messages that facilitated the felony. We disagree.

The Commonwealth presented evidence that, shortly before Appellant sold methamphetamine to Trooper Reed, "Joey" sent text messages to Detective Wood regarding a drug sale to Wood's friend (Trooper Reed). During the transaction, Appellant told Trooper Reed, "people call me Joey." Shortly after the transaction, "Joey" sent text messages to Detective Wood discussing details of the transaction. This evidence was sufficient for the jury to conclude that Appellant sent the text messages facilitating the drug transaction with Trooper Reed.[8]

## Weight of the Evidence

Next, Appellant claims that the verdict was contrary to the weight of the evidence. His argument in support of this claim is almost identical to his argument in support of his insufficiency claim.

Before reaching the merits of this claim, we must determine whether it has been properly preserved.[9] Under the Rules of Criminal Procedure:

---

[8] We note that the information alleged Appellant committed the crimes at issue between January 28, 2015, and June 9, 2015. Because we hold that the evidence was sufficient to prove criminal use of a communication facility with respect to the January 2015 sale to Trooper Reed, we need not address whether there was sufficient evidence to prove use of a communication facility with respect to the June 2015 incident.

[9] Although the Commonwealth does not raise the issue of waiver, we may raise the issue *sua sponte*. ***See Commonwealth v. Edmondson***, 718 A.2d 751, 752 n.7 (Pa. 1998) ("This Court may raise the issue of waiver *sua sponte*").

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). Failure to comply with Rule 607 will result in waiver, even if an appellant includes a weight of the evidence claim in his Pa.R.A.P. 1925(b) statement and the trial court addresses the issue in its Pa.R.A.P. 1925(a) opinion. ***Commonwealth v. Sherwood***, 982 A.2d 483, 494 (Pa. 2009), ***cert. denied***, 559 U.S. 1111 (2010).

Instantly, although Appellant filed a post-sentence motion, that motion did not include a weight claim. Moreover, we have not found, and Appellant has not identified,[10] any place where his weight of the evidence claim was raised before the trial court. Although Appellant included a weight claim in his Rule 1925(b) statement and the trial court addressed the issue in its Rule 1925(a) opinion, these actions did not preserve the issue. Therefore, Appellant's weight of the evidence claim is waived. ***See Sherwood***, 982 A.2d at 494.

---

[10] Pennsylvania Rule of Appellate Procedure 2117 requires the appellant to include in his brief a "statement of the case" including a "statement of place of raising or preservation of issues." Pa.R.A.P. 2117(c). Rule 2119 requires the appellant to set forth similar information in the argument section of his brief. Pa.R.A.P. 2119(e).

Even if Appellant had properly preserved his weight claim, he would not be entitled to relief. "The trial court, in the exercise of its discretion, may award a new trial on the basis that the verdict is against the weight of the evidence if the verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Gibson*, 720 A.2d 473, 480 (Pa. 1998), *cert. denied*, 528 U.S. 852 (1999). As discussed in connection with Appellant's sufficiency argument, our review of the record convinces us that the verdict is supported by the evidence. The trial court concluded that the verdict was not against the weight of the evidence, and we discern no abuse of discretion in that ruling. *See* Trial Ct. Op. at 6.

**Sentence**

In his third issue, Appellant challenges his sentence. First, he argues that the sentence "was illegal, unconstitutional, and cruel and unusual in that it was outside of the sentencing guidelines and did not fully take into considerations [*sic*] the Appellant's cooperation with the Commonwealth, nor his family's circumstances." Appellant's Brief at 13. Second, he argues that the criminal use of communication facility charge should have merged with the delivery of a controlled substance charge for purposes of sentencing. *Id.*

Discretionary Aspects

Appellant's claim that his sentence was outside the sentencing guidelines and did not take into consideration his cooperation or family

circumstances is a challenge to the discretionary aspects of his sentence, not the legality of his sentence. *See Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa. Super. 1995) (claim that sentence was excessive because trial court overemphasized seriousness of offense without considering mitigating factors was a challenge to discretionary aspects of sentence), *appeal denied*, 676 A.2d 1195 (Pa. 1996); *Commonwealth v. Rhoades*, 527 A.2d 148, 154 (Pa. Super. 1987) (claim that sentence was excessive and was outside range suggested by sentencing guidelines was a challenge to the discretionary aspects of the sentence), *appeal denied*, 557 A.2d 343 (Pa. 1989).

"[A] challenge to the discretionary aspects of a sentence is not appealable as of right." *Commonwealth v. Colon*, 102 A.3d 1033, 1042 (Pa. Super. 2014), *appeal denied*, 109 A.3d 678 (Pa. 2015). Before we exercise jurisdiction to reach the merits of Appellant's claim, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Id.* at 1042-43. Only if the appeal satisfies each of these four requirements may we proceed to decide the substantive merits of Appellant's claim. *Id.* at 1043.

Here, Appellant satisfied the first **Colon** requirement by filing a timely notice of appeal. However, he failed to satisfy two other **Colon** requirements. The only sentencing claim Appellant raised in his post-trial motion was that the trial court sentenced him to an aggravated sentence without stating any reason for doing so. Post-Sentence Mot. at 2. Appellant therefore failed to preserve the discretionary sentencing issue he now raises on appeal. Further, as the Commonwealth notes, Appellant's brief fails to include a concise statement of the reasons relied upon for allowance of an appeal. Commonwealth's Brief at 13; *see Commonwealth v. McNear*, 852 A.2d 401, 408 (Pa. Super. 2004) (if appellant fails to include concise statement and Commonwealth objects, issue is waived). Consequently, we will not address the merits of Appellant's discretionary sentencing claim.

Legality

Appellant also argues that the charges of criminal use of a communication facility and delivery of a controlled substance should have merged for sentencing purposes. Appellant's Brief at 13-14.

The Commonwealth contends that this claim is waived because Appellant did not raise it before the trial court. Commonwealth's Brief at 15. However, because this claim implicates the legality of Appellant's sentence, Appellant could not waive it. **See Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009) (merger claim implicates legality of sentence); **Commonwealth v. Kitchen**, 814 A.2d 209, 214 (Pa. Super. 2002) ("the

legality of sentence is never waived"), **aff'd**, 839 A.2d 184 (Pa. 2003) (mem.).

In addressing the question whether two convictions merge for sentencing purposes, our standard of review is *de novo* and our scope of review is plenary. **Baldwin**, 985 A.2d at 833. The Sentencing Code provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. As the Court in **Baldwin** explained, Section 9765 "prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Baldwin**, 985 A.2d at 833.

"The preliminary consideration under Section 9765 is whether the two crimes at issue arose from a single act." **Commonwealth v. Yeomans**, 24 A.3d 1044, 1050 (Pa. Super. 2011). In assessing this consideration, "the proper focus is not whether there was a 'break in the chain' of criminal activity, but rather, whether 'the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime.'" **Id.** (citation omitted). In **Yeomans**, the defendant used the internet to arrange to have sex with a fourteen-year-old girl, offered to

pay the girl in exchange for sex when he met her in person, and engaged in sexual intercourse with her. *Id.* at 1048. Yeomans pleaded guilty to one count each of statutory sexual assault, corruption of minors, and patronizing prostitutes. *Id.* at 1045. On appeal, Yeomans argued that the trial court should have merged the charge of corruption of a minor with one of the other two charges. *Id.* at 1046. This Court rejected his argument, explaining:

> In this case, although [Yeomans] pled guilty to a "single encounter" with the fourteen-year-old victim in arranging over the internet to meet with her, and agreeing to pay her for sex once he met her in person, [Yeomans] committed "multiple distinct criminal acts," beyond the sexual activity he engaged in with the victim, thereby supporting his statutory sexual assault conviction. As [Yeomans] committed three separate criminal acts, the crimes for which he was convicted do not merge.

*Id.* at 1050 (internal citation omitted).

Instantly, Appellant committed two separate criminal acts: (1) using a communication facility (cell phone) to arrange a drug transaction, and (2) delivering methamphetamine to Trooper Reed. Because Appellant's crimes did not arise from a single criminal act, merger does not apply. *See Yeomans*, 24 A.3d at 1050.

Moreover, not all of the statutory elements of one of Appellant's offenses are included in the elements of the other. Delivery of a controlled substance requires: (1) delivering (2) a controlled substance (3) without legal authorization. 35 P.S. § 780-113(30). Criminal use of a communication facility has three elements: (1) knowingly and intentionally using a

communication facility; (2) knowingly, intentionally, or recklessly facilitating an underlying felony; and (3) occurrence of the underlying felony. **Moss**, 852 A.2d at 382. Thus, Appellant could have used a communication facility to facilitate a felony without delivering a controlled substance. Likewise, Appellant could have delivered a controlled substance without using a communication facility. Thus, the second requirement for merger has not been met. **See Baldwin**, 985 A.2d at 833.[11]

In summary, we conclude that the evidence was sufficient to support the verdict; Appellant's weight of the evidence and discretionary sentencing claims are waived; and Appellant's sentence is legal.

Judgment of sentence affirmed.

_____

[11] Appellant argues that in **Commonwealth v. Robertson-Dewar**, 829 A.2d 1207 (Pa. Super.), **appeal denied**, 839 A.2d 352 (Pa. 2003), this Court held that a conviction for criminal use of a communication facility merges with the underlying crime. Appellant's Brief at 13. However, as the Commonwealth points out, the sole issue before this Court in **Robertson-Dewar** was the sufficiency of the evidence to prove sexual abuse of children. Commonwealth's Brief at 16 (citing **Robertson-Dewar**, 829 A.2d at 1211). Although the trial court had found that Robertson-Dewar's convictions for criminal use of a communications facility merged with his convictions for the underlying offense (sexual abuse of children), this Court did not address the merger issue. We therefore find Appellant's reliance on **Robertson-Dewar** misplaced.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/26/2017</u>