**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Anthony A. MOSS, Appellant.**

**Commonwealth of Pennsylvania,**
**Appellee**

**v.**

**Dana Q. Austin, Appellant.**

**Commonwealth of Pennsylvania,**
**Appellee**

**v.**

**Robert Sullivan, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 20, 2003.

Filed June 14, 2004.

Nick A. Turco, New Castle, for appellants.

Mary B. Seiverling, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before: STEVENS, LALLY–GREEN, and MONTEMURO *, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellants, Anthony A. Moss, Dana Q. Austin and Robert Sullivan appeal from the trial court's April 4, 2003 judgment of sentence. We affirm in part and reverse in part the judgment of sentence against Appellant Moss. We reverse the judgment of sentence against Appellant Austin. We affirm the judgment of sentence against Appellant Sullivan.

¶ 2 The trial court found the following facts:

The above captioned defendants each have pending before the Court motions challenging the Constitutionality of the Statute under which they are charged, Criminal Use of a Communications Facility (18 Pa.C.S.A. § 7512), and the sufficiency of the evidence relating to each charge. All defendants have agreed to have hearing on their pending motions consolidated with a joint non-jury trial, held on stipulation of evidence, with the Court to decide the Motions and enter verdicts as appropriate.[1]

1 The Defendant Moss is also charged with Delivery of a Controlled Substance, Possession of a Controlled Substance, and Possession of a Controlled Substance With Intent to Deliver, all violations of the Controlled Substance, Drug Device and Cosmetic Act.

Those stipulations are as follows:

1. Telephone conversations were intercepted and recorded by the authorities.

2. The other speaker in all of these conversations James Johnson was selling illegal substances during the time in question.

3. Identification of all of the defendants' voices and all other voices recorded would be established by the Commonwealth's testimony.

4. The Commonwealth's expert in the field of narcotics would testify in the manner set forth in the written stipulated testimony entered of record as exhibits.

5. The crime lab reported submitted regarding Anthony Moss would have been the only crime lab reports that would have been submitted at trial, and the various police reports submitted would be the substance of the testimony against Defendant Moss.

6. That each submitted packet of stipulated evidence shall be evaluated independent of all other defendants.

7. That this Court will, after examination of facts and law, issue a verdict by order of court.

. . . . .

*Robert Sullivan*

The Defendant, Robert Sullivan, is charged with two counts of Criminal Use of a Communication Facility based upon two separate telephone conversations,

one occurring on October 12, 2001 and the other on October 13, 2001. Each telephone conversation forms the basis for each separate count.

Relative to Count I, on October 12, 2001, Sullivan telephoned Johnson and stated, "I need one of them when you get a chance" and Johnson replied, "Alright, I'll hit youns up." It is stipulated that Agent Shaffer, Sergeant Bouye and/or and [sic] expert would testify that this conversation consists of an inquiry by Sullivan about purchasing drugs from Johnson and a confirmation from Johnson that he will get in contact with Sullivan when he has drugs available for purchase. This inference is further buttressed by the second telephone conversation that took place on October 13, 2001 and forms the basis for Count 2.

Relative to Count 2 during the second conversation that occurred on October 13, 2001, Sullivan called Johnson and stated he wants an "eight for me" and repeated himself by stating an "eight ball". Johnson replied by stating, "Ah, alright. You at home?" Sullivan answered, "Yes", and Johnson stated, "Alright. In a minute." The stipulation of facts provides that Agent Shaffer, Sergeant Bouye and/or an expert would testify that this conversation consists of Sullivan asking to purchase cocaine in the amount of 1/8 ounce from Johnson, and Johnson informing Sullivan that he would come to his home in a minute.

Additionally, and in support of the inference referred to in Count I, Sullivan also inquired in this conversation where Johnson has been and why he had not gotten in touch with him, followed then by the conversation where Johnson requested what Sullivan wanted. Trying the content of these two conversations together, a permissible inference is that when Johnson states on October 12, 2001 that "I need one of them", he is clearly referring to his desire to purchase drugs.

The surveillance further reveals that surveillance was conducted after the phone call and Johnson was seen entering Sullivan's home a short period after the phone call and leaving within a few minutes, which is consistent with the type of activity that would be consistent with someone delivering illegal drugs.

The stipulated evidence supports the conclusion that on October 12, 2001 and on October 13, 2001, Sullivan telephoned Johnson to cause or facilitate the attempted unlawful delivery of a controlled substance from Johnson to sell them.

### Dana Austin

The Defendant, Dana Austin, is charged with four counts of Criminal Use of a Communication Facility. Count I is based upon a telephone conversation between Defendant Austin and Johnson on October 11, 2001 at 15:48; Count 2 is based upon a second telephone conversation that occurring [sic] on October 11, 2001 at 17:45. On October 23, 2001 at 16:07, Johnson telephoned Austin and left a message on Austin's answering machine. Count 3 relates to a telephone conversation between Defendant Austin and Johnson on October 23, 2001 at 17:48. Count 4 relates to a telephone conversation occurring between Defendant Austin and Johnson on October 24, 2001 at 16:25. The common thread between all the telephone conversations is that Defendants Austin and Johnson are discussing Austin supplying Johnson with money so that Johnson can make a purchase of drugs from "Big Lee" from New York and to thereby provide the illegal drugs to Defendant Austin.

In the first phone call, Defendant Austin telephones Johnson to inform him that a woman friend had stolen money from his truck. Johnson replies that he "needed that change." Defendant Austin assures Johnson that as soon as he can obtain the money, he will bring it to Johnson. When one considers all of the intercepted conversations together, it is clear that Johnson wants Austin's money in order to purchase illegal narcotics. Johnson made a phone call on October 16, 2001 to "Big Lee" in the Bronx, New York to arrange for a purchase of narcotics from "Big Lee."

The second telephone conversation occurring approximately two hours later on October 11, 2001 is a follow-up call by Johnson to confirm when Defendant Austin is going to "get straight" meaning get the money that Austin owes to Johnson. The third conversation, which occurred on October 23, 2001 at 16:07 is a call where Johnson calls Defendant Austin and leaves a message inquiring, "Did you get that yet?"

In the fourth [sic] telephone conversation, Defendant Austin calls Johnson and inquires about "getting some now." Johnson responds, "I'll have something for ya."

In the final phone call occurring on October 24, 2001 at 16:25, Johnson states to Defendant Austin "What's up?" Austin responds, "Check you out later" and "For sure I'm grab some soft last night." "Soft" is a street term for powdered cocaine. Austin further states that he was able to get the "soft" "a little quicker than the hard." "Hard is a street term of crack cocaine. Defendant Austin is telling Johnson that he was able to obtain powdered cocaine the night before and once he sells it, Austin will be able to provide Johnson the money that he owes him. Thus, Defendant Austin was able to obtain illegal drugs from an alternative source thereby enabling Austin to sell those to have the money for Johnson after the sale of those illegal substances.

Taking all of the facts contained in the stipulation together allows the inference that Johnson is engaging in the illegal trafficking of controlled substances and that Defendant Austin is facilitating the attempts to acquire illegal contraband by Johnson by providing Johnson to provide [sic] the funds to do so. In exchange, Defendant Austin desires to obtain some of the illegal substances from Johnson for Austin's own purposes. The purpose of all of these telephone conversations, which are the subject of the various counts, is Austin's attempt to facilitate the illegal delivery of drugs to Johnson by Defendant Austin providing money to Johnson for that purpose. The use of the telephone in each instance to facilitate the attempt to acquire the illegal drug activity brings Defendant Austin's conduct within the provisions of Criminal Use of a Communications Facility.

### Anthony Moss

The Defendant, Anthony Moss, is charged with seven separate counts of Criminal Use of a Communications Facility, specifically Count 1, Count 2, Count 6, Count 7, Count 8, Count 11[sic] and Count 12. Counts 1, 2, 6, 7 and 8 all relate to conversations between a confidential informant and the Defendant Moss to arrange for the sale and delivery of illegal controlled substances from Moss to the confidential informant, which did in fact occur. The only conclusion that can be reached from the stipulation is that the telephone was used to make the arrangements for the controlled buys that subsequently did occur between the confidential informant and the Defendant. There is nothing

ambiguous in the content of those telephone conversations and each conversation is summarized in the police reports pertaining to the proceedings against the Defendant Moss.

Counts 12 and 13 deal respectively with telephone conversations that occurred on October 14, 2001 and October 26, 2001. In the telephone call of October 13, 2001, Defendant called Johnson and inquired of whether or not Johnson had any illegal drugs to sell by asking, "what can you do for me?" Johnson's reply is "Tomorrow." In the second telephone call, Moss inquires, "Ain't nothing jumpin'?" to which Johnson replies negatively. Moss then states, "Goddam boy, watcha doin'?" to which Johnson replies that he is "just waiting around." Expert testimony provides the explanation that the short vague nature of the conversation shows that Moss and Johnson deal with each other on a regular basis in the purchase by Moss of illegal drugs from Johnson and that Johnson is familiar with what Moss wants and the price. In addition, in the second conversation, the expert testimony opines that Defendant Moss wants to buy illegal drugs and Johnson does not have any to sell but is waiting on a new shipment, which is confirmed by another telephone conversation between Johnson and "Big Lee" which indicates that "Big Lee" will be bringing a shipment of illegal drugs to Johnson.

In both conversations, Defendant Moss telephoned Johnson to facilitate the attempted sale of illegal drugs from Johnson to Moss. The use of the telephone for this purpose is within the prohibition of Criminal Use of a Communications Facility.

Trial Court Opinion, 2/14/03, at 1–2, 12–17.

¶ 3 Appellants filed separate briefs, each of which raises the same issues for our review:

Whether 18 Pa.C.S.A. 7512 Criminal Use of a Communication Facility is unconstitutional for overbreadth and vagueness.

Was the evidence produced at trial insufficient as a matter of law on the offense of Criminal Use of a Communication Facility?

Brief of Appellant Anthony Moss at 9; Brief of Appellant Dana Q. Austin, no page numbers in original; Brief of Appellant Robert Sullivan, no page numbers in original.

¶ 4 A legislative enactment "is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *Commonwealth v. Mockaitis*, 575 Pa. 5, 834 A.2d 488 (2003). The party challenging constitutionality bears "a heavy burden of persuasion." *Id.* Constitutionality of a statute is a question of law, therefore the scope of our review of this issue is plenary. *Theodore v. Delaware Valley School Dist.*, 575 Pa. 321, 836 A.2d 76 (2003).

¶ 5 Appellants' first argument, that 18 Pa.C.S.A. § 7512 is unconstitutional, presents an issue of first impression. Section 7512 provides as follows:

§ 7512. Criminal use of communication facility

(a) Offense defined.—A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64),[1] known as the Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the

communication facility is utilized constitutes a separate offense under this section.

1 35 P.S. § 780–101 et seq.

(b) Penalty.—A person who violates this section shall, upon conviction, be sentenced to pay a fine of not more than $15,000 or to imprisonment for not more than seven years, or both.

(c) Definition.—As used in this section, the term "communication facility" means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa.C.S.A. § 7512. Section 7512 was enacted on December 21, 1998 and became effective 60 days later.

■■■■■ ¶ 6 Legislation enacted by our General Assembly carries a strong presumption of constitutionality, and the "party challenging a statute's constitutionality bears a heavy burden to demonstrate that the legislation clearly, palpably and plainly violates the terms of the constitution." *Commonwealth v. Burnsworth*, 543 Pa. 18, 669 A.2d 883, 886 (1995) (citations omitted). A statute is void for vagueness only where "persons of 'common intelligence

must necessarily guess at its meaning and differ as to its application.'" *Commonwealth v. Cotto*, 562 Pa. 32, 753 A.2d 217, 220 (2000), *quoting, Fabio v. Civil Service Comm'n*, 489 Pa. 309, 414 A.2d 82, 84 (1980). A statute is overbroad if it punishes constitutionally protected conduct. *Commonwealth v. Balog*, 448 Pa.Super. 480, 672 A.2d 319 (1996).

¶ 7 Our research has uncovered no published opinion in which § 7512 is directly at issue.[1] However, case law abounds on an analogous federal statute, 21 U.S.C.A. § 843(b), whose language is similar to that of § 7512.[2] Federal courts have frequently upheld § 843(b) against Commerce Clause challenges, but our research has uncovered only one case in which the defendant challenged the statute as overly broad and vague.

¶ 8 In *United States v. Rodgers*, 755 F.2d 533 (7th Cir.1985), the defendant claimed that § 843(b) was unconstitutional in that it prohibits some communications that are protected under the First Amendment. The Court rejected defendant's claim, holding that the *mens rea* requirement in § 843 applies both to the defendant's use of a communication facility and to defendant's facilitation of the underlying felony. *Id.* at 542–43. That is, the defendant must knowingly and intentionally use a communication facility, and through such

---

1. We note that in *Commonwealth v. Robertson–Dewar*, 829 A.2d 1207 (Pa.Super.2003), the defendant was charged with ten counts of violating section § 7512. The underlying crime at issue was distribution of child pornography over the internet in violation of 18 Pa.C.S.A. § 6312. The § 7512 charges merged into the § 6312 charges for purposes of sentencing and thus were not at issue in the appeal.

2. Section 843(b) reads as follows:
 (b) Communication Facility. It shall be unlawful for any person knowingly or intentionally to use any communication facility

in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this title or title III. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.
21 U.S.C.A. § 843(b).

use of the communications facility the defendant must knowingly and intentionally facilitate the underlying felony. Thus, the Court concluded that the statute was not unconstitutionally overbroad. *Id.* The Court rejected the defendant's void for vagueness claim for similar reasons, noting that a sufficient scienter requirement mitigates vagueness by providing adequate notice of the proscribed conduct. *Id.* at 544.

¶ 9 We note that § 7512 does not include any explicit scienter requirement. As such, we refer to 18 Pa.C.S.A. § 302(c), which provides as follows:

> (c) Culpability required unless otherwise provided.—When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly, or recklessly with respect thereto.

18 Pa.C.S.A. § 302(c). Thus, we conclude that the trial court was correct in choosing to read a *mens rea* requirement into § 7512. We further conclude, pursuant to the express language of § 302(c), that the *mens rea* requirement applies to each material element of the offense. Thus, to sustain a conviction under 18 Pa.C.S.A. § 7512, the Commonwealth must prove that a defendant intentionally, knowingly, or recklessly used a communication facility, and that, in so doing, the defendant intentionally, knowingly, or recklessly facilitated the commission or attempted commission of the underlying felony.

¶ 10 Section 7512, construed in light of the language of § 302(c), is not unconstitutionally vague or overbroad. The term "communication facility" is the subject of a detailed definition in § 7512(c). The list of underlying felonies is explicitly limited to felonies under Title 18 or the Controlled Substance, Drug, Device and Cosmetic Act. We fail to see how persons of common intelligence would be forced to guess at

the meaning and application of § 7512, and, therefore, we conclude that it is not void for vagueness. *Cotto.* Nor can Appellants reasonably argue that § 7512, as construed above, proscribes any constitutionally protected activity. The activity proscribed is defined in Title 18 or the Controlled Substance Drug Device and Cosmetic Act. Thus, § 7512 is not unconstitutionally overbroad. *Balog.* Appellants' first argument fails.

 ¶ 11 Appellants next argue that the stipulated evidence was insufficient to sustain their convictions under § 7512. The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find *every element* of the crime beyond a reasonable doubt. *Commonwealth v. Vetrini,* 734 A.2d 404, 406–07 (Pa.Super.1999). Additionally, it is not the role of an appellate court to weigh the evidence or to substitute our judgment for that of the fact finder. *Id.* When the court is sitting as the finder of fact it is presumed that inadmissible evidence is disregarded and that only relevant and competent evidence is considered. *Commonwealth v. Gonzales,* 415 Pa.Super. 564, 609 A.2d 1368, 1371 (1992).

¶ 12 Again, we are presented with an issue of first impression in the Commonwealth, inasmuch as no court has reviewed convictions under § 7512 for sufficiency of the evidence. We turn for guidance to case law construing the similar federal statute, 21 U.S.C.A. § 843(b). Every federal court that has addressed sufficiency of the evidence under § 843(b) has held that a conviction cannot stand without proof beyond a reasonable doubt that the underlying felony did in fact occur. *United States v. Iennaco,* 893 F.2d 394, 396 (D.C.Cir.1990), *citing, United States v.*

*Dotson,* 871 F.2d 1318, 1321 (6th Cir.1989); *United States v. Johnstone,* 856 F.2d 539, 543 (3d Cir.1988); *United States v. Mims,* 812 F.2d 1068, 1077 (8th Cir.1987); *United States v. Russo,* 796 F.2d 1443, 1463 (11th Cir.1986); *United States v. Jefferson,* 714 F.2d 689, 699 (7th Cir.1983); *United States v. Rey,* 641 F.2d 222, 224 n. 6 (5th Cir. 1981); *United States v. Webster,* 639 F.2d 174, 189 (4th Cir.1981); *United States v. Watson,* 594 F.2d 1330, 1342–43 (10th Cir. 1979); *United States v. Steinberg,* 525 F.2d 1126 (2d Cir.1975). Indeed, a bedrock principle of the American criminal justice system is that "the Due Process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute a crime with which he is charged." *Johnstone,* 856 F.2d at 542.

¶ 13 With regard to the instant matter, we conclude, and the parties apparently do not dispute, that the Commonwealth must prove beyond a reasonable doubt that: (1) Appellants knowingly and intentionally used a communication facility; (2) Appellants knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred. The law of our Commonwealth compels this result. *Vetrini.* Facilitation has been defined as "any use of a communication facility that makes easier the commission of the underlying felony." *United States v. Davis,* 929 F.2d 554, 559 (10th Cir.1991). If the underlying felony never occurs, then Appellants have facilitated nothing and cannot be convicted under § 7512.

¶ 14 The record before us is more than sufficient to establish that Appellants knowingly and intentionally used a communications facility—in this case a telephone—to discuss illicit drug transactions, thus satisfying prong one of the inquiry. The focus of our inquiry as to each of the Appellants will be whether the record contains sufficient evidence that these telephone conversations facilitated the actual commission of an underlying felony.

¶ 15 We commend the highly regarded trial court for an admirable job of analyzing open questions of law and parsing through a confusing record. We agree with the trial court that the Commonwealth produced sufficient evidence to convict Appellants Moss and Sullivan, but we conclude that the evidence is insufficient to sustain the conviction against Appellant Austin.

¶ 16 We first consider the evidence with regard to Appellant Robert Sullivan. The trial court found that Sullivan engaged in several telephone conversations with James Johnson, a known drug dealer. The trial court also found that, shortly after one of these conversations, Johnson was seen entering Sullivan's home and leaving after a few minutes. These findings of fact find support in transcripts of intercepted telephone conversations and police reports that make up the stipulated evidence that the trial judge relied upon in rendering his verdict.

¶ 17 Next, we must determine whether these facts were sufficient to sustain the trial court's conclusion that Sullivan facilitated Johnson's attempted unlawful delivery of a controlled substance. We begin with construction of § 7512 as it applies to inchoate offenses. The express language of § 7512(a) prohibits use of a communications facility to facilitate the *attempted* commission of an underlying felony. Moreover, § 7512 does not require that the defendant be the one to commit the underlying felony.

■ ¶ 18 The law of attempt is well settled. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward commission of that

crime." 18 Pa.C.S.A. § 901(a). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *Commonwealth v. Zingarelli,* 839 A.2d 1064, 1069 (Pa.Super.2003), *quoting, Commonwealth v. Gilliam,* 273 Pa.Super. 586, 417 A.2d 1203, 1205 (1980). "The defendant need not actually be in the process of the crime when arrested in order to be guilty of criminal attempt." *Id.* Delivery of a controlled substance is prohibited under 35 P.S. § 780–113. The parties do not dispute that the controlled substance at issue in the instant matter is cocaine.

¶ 19 In *Commonwealth v. Mills,* 329 Pa.Super. 196, 478 A.2d 30 (1984), the defendant was charged with attempt to deliver a controlled substance. The basis for the charge was that the defendant accompanied an undercover agent and several other people to the home of a dealer who purportedly would sell methamphetamine to the agent. The dealer was not at home. The defendant indicated that he knew another individual who could deliver the methamphetamine, if the agent could wait until the evening. *Id.* at 32. This Court vacated the judgment of sentence on the grounds that the Commonwealth did not produce sufficient evidence of an attempted delivery. *Id.* at 34. The Commonwealth produced no evidence that the defendant knew the dealer or was responsible for directing the agent to the dealer's house, and there was no evidence as to whether the defendant would play any significant role in the transaction. *Id.* Thus, the defendant did not take a substantial step toward delivery of a controlled substance.

¶ 20 In *Zingarelli,* however, this Court sustained a conviction for attempted statutory sexual assault and involuntary deviate sexual intercourse where the evidence showed that the defendant had rented a motel room, purchased wine and condoms, packed an overnight bag and traveled to a meeting point with a girl that he knew to be 15 years old. *Zingarelli,* 839 A.2d at 1071.

¶ 21 We conclude that the evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to sustain the conviction against Sullivan. The record reflects that Sullivan placed a telephone conversation to Johnson inquiring about purchasing drugs, and that Johnson agreed to make the sale. A surveillance report indicates that shortly after the second intercepted telephone conversation, Johnson was seen briefly entering Sullivan's home. Thus, as was the case in *Zingarelli,* Appellant made the necessary preparations and arranged a meeting point at which he and Johnson would complete the illicit transaction. Shortly thereafter, Johnson arrived at Appellant's home and Appellant allowed him inside. This evidence, viewed in a light most favorable to the Commonwealth, is sufficient to establish that Appellant took a substantial step toward completing the drug transaction. We will affirm the judgment of sentence against Sullivan.

¶ 22 We next consider the evidence against Appellant Austin. As with Sullivan, the trial court concluded that the record established that Austin facilitated Johnson's attempt to deliver a controlled substance. The trial court concluded that each of the several intercepted telephone conversations between Austin and Johnson related to Austin's plan of supplying Johnson with money that Johnson would in turn use to obtain illegal narcotics and supply them to Austin. The record is devoid of any evidence that the contemplated transaction between Austin and Johnson actually occurred or that either

Austin or Johnson took a substantial step toward completion of the transaction they discussed. Viewed in the light most favorable to the Commonwealth, the evidence establishes merely that Austin engaged in drug-related telephone conversations with a known drug trafficker. Absent proof beyond a reasonable doubt that Austin's conversations facilitated a specific underlying felony that was in fact carried out, the conviction cannot stand. *Vetrini; Johnstone.* For the foregoing reasons, we will reverse the judgment of sentence against Appellant Austin.

■ ¶ 23 Finally we consider the evidence against Appellant Moss. The record against Moss establishes that, as to Counts 1, 2, 6, 7 and 8, Moss engaged in telephone conversations with a confidential informant and that these telephone conversations facilitated controlled buy transactions between Moss and the informant. Accordingly, the record viewed in the light most favorable to the Commonwealth is sufficient to sustain the convictions as to Counts 1, 2, 6, 7 and 8.

■ ¶ 24 Counts 12 and 13 against Appellant Moss are based on conversations between Moss and Johnson. The trial court concluded that these conversations establish that Moss and Johnson were familiar with each other and that the goal of the conversations was to facilitate Johnson's attempt to deliver illegal narcotics to Moss. We conclude that the record supports the trial court's findings of fact. Nonetheless, the convictions on Counts 12 and 13 cannot stand. As with Appellant Austin, the record is devoid of any evidence that Johnson actually attempted to make the delivery he discussed with Moss. The Commonwealth may not obtain a con-

viction under § 7512 based solely on evidence that the Appellant engaged in drug-related telephone conversations with a known drug trafficker. The Commonwealth must prove beyond a reasonable doubt that the telephone conversations facilitated the commission of a specific underlying felony. *Vetrini; Johnstone.* Thus, we will reverse the trial court's judgment of sentence with regard to Counts 12 and 13.

¶ 25 To summarize, we have concluded that 18 Pa.C.S.A. § 7512 is not unconstitutionally vague or overbroad. We have further concluded that the record contains sufficient evidence to support the conviction of Appellant Moss on all but Counts 12 and 13. The record contains sufficient evidence to support the conviction of Appellant Sullivan. The record does not contain sufficient evidence to support the conviction of Appellant Austin.

¶ 26 Judgment of sentence against Appellant Robert Sullivan affirmed. Judgment of sentence against Appellant Anthony A. Moss affirmed in part and reversed in part. Judgment of sentence against Appellant Dana Q. Austin reversed. Appellant Austin is ordered discharged. Case remanded for further proceedings consistent with this opinion.[3] Jurisdiction relinquished.

¶ 27 STEVENS, J.: files Concurring & Dissenting Opinion.

STEVENS, J., Concurring and Dissenting:

¶ 1 While I concur with the majority's holding that 18 Pa.C.S.A. § 7512 is constitutional, I respectfully dissent from its conclusion with regard to the sufficiency of the evidence to support convictions against

---

3. We believe that the further proceedings will be minimal, since the sentences handed down to Appellant Moss for Counts 12 and 13 were to run concurrently with the sentences for Counts 1, 2, 6, 7, and 8.

Appellant Moss and Appellant Austin. I would affirm the judgments of sentence of all three Appellants, based on the comprehensive opinion of the Honorable Dominick Motto.

