J-S32021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RANDY CEPEDES ORTEGA | |
| Appellant | No. 3227 EDA 2016 |

Appeal from the Judgment of Sentence Entered June 10, 2016
In the Court of Common Pleas of Carbon County
Criminal Division at No: CP-13-CR-0000249-2014

BEFORE:  GANTMAN, P.J., STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                          **FILED JULY 18, 2017**

Appellant Randy Cepedes Ortega appeals from the June 10, 2016 judgment of sentence entered in the Court of Common Pleas of Carbon County ("trial court"), following his jury conviction for, *inter alia*, criminal use of a communication facility.[1]  Upon review, we affirm.

The facts and procedural history of this case are not in dispute.  As recounted by the trial court:

> [Appellant] was arrested by Weatherly Police and charged with the following offenses: 1) criminal conspiracy (18 Pa.C.S.A. § 903); 2) possession with intent to . . .  deliver [("PWID")] a controlled substance (35 P.S. § 780-113(a)(30)); 3) criminal use of a communication facility (18 Pa.C.S.A. § 7512(a)); 4) simple possession of a controlled substance (35 P.S. § 780-113(a)(16)) and [5)] possession of drug paraphernalia (35 P.S. § 780-113(a)(32)).  These charges stemmed from an undercover

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 7512(a).

investigation into illegal drug trafficking in the Weatherly area and involved a co-defendant, Megan Rhoades [("Rhoades")], and a confidential informant ("CI").[FN1]

> [FN1.] This [CI] was later identified at trial as Christopher Miller.

A jury trial was held on March 2, 2015 and March 3, 2015. At the trial, the [CI] testified that he contacted [Rhoades] for the purpose of purchasing heroin from her. Rhoades and [Appellant] appeared at the designated location where they met with the [CI] for purposes of this transaction. Once together, the Weatherly Police arrived and arrested Rhoades and [Appellant].

Sergeant Michael Bogart ("Bogart") testified that he had arrested the [CI] for driving under the influence and after discussing what the [CI] could possibly do to "help himself," the [CI] agreed to arrange this drug deal. Bogart testified that he arrived at the designated location, approached the vehicle, and eventually arrested both [Appellant] and Rhoades. The heroin, later determined to be fifty (50) bags with a weight of 1.2 grams, was pulled by Rhoades from her sweat pants and given to Bogart.

Agent Charles Horvath ("Horvath") testified as an expert in narcotics investigations. Horvath testified that he reviewed the evidence involved in this case and based upon the quantity of heroin seized, the packaging, the money found, the location of where it was seized from and the lack of "user" paraphernalia, it was his expert opinion that these circumstances were indicative of possession with intent to deliver drugs and not possession for personal use. Horvath also testified on re-cross that it was not uncommon for a female drug dealer to bring male protection to a drug deal. He also testified that he never heard of a "middle man" bringing protection.

Rhoades also testified for the Commonwealth.[FN2] She testified that she was contacted by the [CI] to reach out to [Appellant] for heroin, unbeknownst to her that this was going to result in a "bust operation"[FN3] should it come to fruition. Rhoades testified that she reached out to [Appellant] since the [CI] himself was unsuccessful in doing so. She also testified that she called [Appellant] about selling heroin and needed a "brick" for a sale in Weatherly. She testified that she went to Hazelton to pick up [Appellant] and travelled back to Weatherly. She also testified that [Appellant] brought the heroin with him and the only reason she was found with it in her pants is because when the police began to surround their car, [Appellant] threw it at her and told her to "hide it." Rhoades claimed that she was only the "middle man" and that [Appellant] was the dealer.

> [FN2.] While Rhoades was also charged in this case, she agreed to testify for the Commonwealth in

- 2 -

exchange for a more favorable disposition of her charges.

[FN3]. A "bust operation," as this scenario was described as by Horvath, is short of a full-blown drug delivery insofar as the police intervene in the matter before the drugs and money exchange hands. That is what occurred here.

Appellant took the stand in his own defense. He testified that he knows Rhoades from their time doing various drugs together. On this occasion, [Appellant] testified that Rhoades called him to accompany her to a location where she was to deliver a quantity of heroin to another individual. In exchange for doing so, Rhoades gave [Appellant] several bags of heroin which [Appellant] admitted he snorted on the ride from Hazelton to Weatherly. He also testified that when the police arrived and arrested both of them, they also seized the empty packets containing the heroin residue. [Appellant] also testified that at no time was he a drug dealer and specifically not on this occasion. [Appellant] did testify that while he was passenger in Rhoades' car, he was fully aware of what Rhoades intended to do that day: deliver drugs to another person.

A verdict was rendered by the jury on March 3, 2015 finding [Appellant] guilty of criminal use of a communication facility, simple possession, and possession of drug paraphernalia, and not guilty of [PWID] and conspiracy to commit possession with intent to deliver.

Trial Court Opinion, 6/10/16, at 1-5 (unnecessary capitalization omitted) (footnotes renumbered and/or omitted) (sic). The trial court sentenced Appellant to three years' probation. Specifically, Appellant was sentenced to three years' probation for criminal use of a communication facility and a concurrent term of one year of probation for both possession of a controlled substance and possession of drug paraphernalia. Appellant timely appealed to this Court. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant raises a single issue for our review: "Whether the evidence introduced at trial is insufficient to prove the offense of criminal use of a communication device occurred as well as the fact that the jury's verdict was not inconsistent inasmuch as the predicate offenses required by the statute were not found by the jury." Appellant's Brief at 7 (unnecessary capitalization omitted). Put differently, Appellant argues that the evidence was insufficient to sustain his conviction for criminal use of a communication facility because the Commonwealth failed to prove beyond a reasonable doubt that that a felony actually occurred. *Id.* at 15-16. In support of his argument, Appellant points out that the jury here acquitted him of the felony counts of conspiracy and PWID.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

Section 7512(a) of the Crimes Code provides in relevant part "[a] person commits a felony of the third degree if that person uses a communication facility to commit, cause or *facilitate the commission or the attempt thereof of any crime which constitutes a felony* under this title or under the act of April 14, 1972 (P.L. 233, No. 64),  known as The Controlled Substance, Drug, Device and Cosmetic Act."  18 Pa.C.S.A. § 7512(a) (emphasis added) (footnote omitted).  Thus, to sustain a conviction under Section 7512, the Commonwealth must establish beyond a reasonable doubt that

> (1) Appellants knowingly and intentionally used a communication facility; (2) Appellants knowingly, intentionally or recklessly *facilitated an underlying felony*; and (3) *the underlying felony occurred*. . . .  Facilitation has been defined as "any use of a communication facility that makes easier the commission of the underlying felony."

*Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004) (citations omitted) (emphasis added).  "If the underlying felony never occurs, then Appellants have facilitated nothing and cannot be convicted under Section 7512(a)." *Id.*

As stated, Appellant here challenges only the occurrence of the underlying felony element of Section 7512(a).  In this regard, he argues that, because the jury acquitted him of the felony charges of criminal conspiracy and PWID, the Commonwealth could not establish the occurrence

of an underlying felony to sustain a conviction for criminal use of a communication facility. Essentially, Appellant advances the proposition that, absent a felony conviction for an underlying offense, a defendant may not be found guilty under Section 7512(a). His argument, however, is at variance with **Moss**, where we explained that Section 7512(a) "does not require that the defendant be the one to commit the underlying felony." **Moss**, 852 A.2d at 382. The Commonwealth needs to demonstrate only that **an** underlying felony occurred, irrespective of who was responsible for it, or, more importantly, whether it resulted in a felony conviction.

While Appellant's argument focuses on his own conduct and his acquittal of the underlying felony crimes of criminal conspiracy and PWID, he ignores his facilitation of the felonious conduct of Rhoades, the other person involved in the narcotics transaction *sub judice*. **See generally Commonwealth v. Rose**, 960 A.2d 149, 157 (Pa. Super. 2008), **appeal denied**, 980 A.2d 110 (Pa. 2009) (noting that the jury could consider any felonious conduct in determining whether a felony occurred). Thus, as we set forth above, under Section 7512(a), the Commonwealth must establish only that a defendant "**facilitated the commission . . . of any crime which constitutes a felony**." 18 Pa.C.S.A. § 7512(a).

Here, based upon our review of the record, we agree with Appellant that the jury did not find him guilty of the two felony charges, *i.e.*,

conspiracy and PWID.[2] We, however, disagree with his suggestion that the acquittal of his felony charges must be construed to mean that no felony occurred in this case. As the facts above bear out, Appellant used his cell phone to facilitate **Rhoades'** narcotics transaction with the CI, *i.e.*, PWID, the felonious conduct supporting Appellant's conviction for criminal use of a communication facility. The Commonwealth presented overwhelming evidence that Appellant facilitated the transaction whereby Rhoades intended to sell fifty bags of heroin to the CI. In particular, the Commonwealth presented expert testimony to establish that the quantity of heroin seized in this case was indicative of PWID. Moreover, the trial court specifically found that the record supported "[Appellant] was fully aware of what Rhoades intended to do that day: deliver drugs to another person." Trial Court Opinion, 6/10/16, at 5. Accordingly, based upon the evidence presented at trial, viewed in a light most favorable to the Commonwealth, we agree with the trial court that the Commonwealth proved the occurrence of an underlying felony sufficient to establish beyond a reasonable doubt Appellant's conviction for criminal use of a communication facility.

Judgment of sentence affirmed.

_____

[2] Appellant's acquittal of conspiracy and PWID suggests that the jury found his testimony credible to the extent he argued that he was not a drug dealer, but only accompanied Rhoades to facilitate the narcotics transaction.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2017