J-A28045-25                    2026 PA Super 20

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                   :           PENNSYLVANIA
                                   :
           v.                   :
                                     :
                                     :
CHRISTOPHER CHARLES : 
YOUNGSTER                     :
                                     :   No. 1845 MDA 2024
                    Appellant

Appeal from the Judgment of Sentence Entered May 21, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0002022-2023

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

OPINION BY LANE, J.:                    **FILED: FEBRUARY 3, 2026**

Christopher Charles Youngster ("Youngster") appeals from the judgment of sentence imposed following his convictions for criminal use of a communication facility and possession of drug paraphernalia.[1]  Youngster contends that the Commonwealth failed to establish that he committed the offense of criminal use of a communication facility where the Commonwealth failed to prove the commission of an underlying crime, or the completion of a substantial step toward such a crime.  We hold that the use of a telephone to arrange the sale of illegal drugs, whether the sale is fully consummated or merely attempted, satisfies the elements of criminal use of a communication facility.  Accordingly, after review, we affirm.

---

[1] **See** 18 Pa.C.S.A. § 7512(a), 35 P.S. § 780-113(a)(32).

The relevant facts and procedural history are as follows. In May 2023, the Commonwealth charged Youngster with the above offenses, as well as possession of a controlled substance. The case proceeded to a jury trial in April 2024. During jury selection,

> [One prospective panel member, juror number twenty-three ("juror number twenty-three"),] testified that he was a patrol supervisor employed by the Pennsylvania State Police at the Tunkhannock, Wyoming County, barracks. Juror number twenty-three testified that he knew [Detective Christopher Maguire ("Detective Maguire") with the Luzerne County District Attorney's Office Drug Task Force, who the Commonwealth named as a witness,] from his time working in law enforcement. [The trial court asked juror number twenty-three if his prior work relationship with Detective Maguire or other detectives would make it difficult for him to serve on the jury in this case.] Juror number twenty-three testified that it would not put him in a difficult situation to serve as a juror. He then testified that he understood the need to be fair and impartial, to disregard all of his training, and to consider the particular facts of the case and the legal instructions. Juror number twenty-three further testified that he would have no difficulty evaluating the case and making the decision that the Commonwealth did not meet its burden, if necessary. Defense counsel challenged this juror for cause because he is a trained law enforcement officer that would bring an expertise to the jury and influence them. This challenge was denied by the court based on juror number twenty-three's sworn testimony during *voir dire* and the record before the court. [Notably, Youngster did not raise any other basis to challenge juror number twenty-three for cause. He specifically did not challenge juror number twenty-three for cause based on the fact that he knew Detective Maguire from his time working in law enforcement.]

Trial Court Opinion, 3/12/25, at 7-8.[2]  Subsequently, Youngster used his first of seven peremptory challenges to strike juror number twenty-three and later used all of his preemptory challenges prior to empaneling of the jury.

During the trial proceedings, the parties presented the following evidence and testimony:

> Detective Robert Capparell (["]Detective Capparell["]) with the Wilkes-Barre Township Police Department . . . and [Detective Maguire] testified for the Commonwealth.  Detective Capparell is the head of the [Wilkes-Barre Township Police Department's] special investigations unit, which includes the investigation of narcotics-related crimes.  Detective Capparell has been a police officer for twenty-seven years, has been doing narcotics-related work for twenty years, and has investigated over three-hundred narcotics cases.  Detective Capparell has attended trainings relative to narcotics trafficking investigations and has used confidential informants in the past.  Detective Maguire has worked in law enforcement for over twenty-seven years, with the past twenty-one years being in strictly narcotics intelligence.  Detective Maguire has had a myriad of training and education courses relative to narcotics investigations and undercover narcotics work.
>
> On May 26, 2023, a law enforcement initiative throughout Luzerne County for the detection and arrest of narcotics crimes, called "Trigger Lock[,"] occurred.  As part of the Trigger Lock initiative, Detective Capparell was advised by his team leader, Detective Maguire, to make contact with any confidential informants he had been working with.  Detective Capparell attempted to make contact with Joseph Fee (["]Joe["]), who was an individual that came into the police station approximately a week prior to discuss doing confidential informant work for income.  During that initial meeting, Detective Capparell gave Joe [twenty dollars] to buy some food since he was homeless.

---

[2] For ease of review, when quoting the trial court's opinion, we have changed the references to "Number 23" to "juror number twenty-three" and "Defendant" to "Youngster."

- 3 -

At 2:34 p.m., Detective Capparell made initial contact by texting the phone number he had been given for Joe. The text message said, "Hey, that all I get for the [twenty] bucks?" At 2:36 p.m., Detective Capparell then called the same phone number. A male answered and Detective Capparell asked if it was Joe; the male said Joe was not there. Detective Capparell then asked the male if he knew where Joe was because Joe was supposed to do some work for him. The male responded that he did not know where Joe was so Detective Capparell disconnected the call at that point. That outgoing phone call lasted approximately thirty-five seconds. Shortly thereafter, Detective Capparell received a phone call from the same number but did not answer it.

Detective Capparell then gave the phone to Detective Maguire to take the lead on arranging any possible narcotics deliveries through Joe's number since he had more undercover narcotics experience. Detective Maguire inquired *via* text message if the person in possession of the phone knew where Joe was because Joe was supposed to get him methamphetamine. Detective Maguire received a response from someone who identified himself as "Chris" and who explained he was getting methamphetamine for his girlfriend and that he could grab some for the detective as well. Detective Maguire identified himself to Chris as "Paul" and told Chris he would like to purchase a "ball" — short for an "eight-ball" which is one-eighth of an ounce of methamphetamine. Chris advised Detective Maguire that one-eighth of an ounce of methamphetamine would cost $140.00.

There were thirty-four text messages and seven phone calls between Chris and detectives relative to arranging the meeting time and place to complete the narcotics delivery. Notably, at 3:13 p.m., Chris texted "I'll have a better idea when Ashley gets back." The final meeting place arranged was the Sunoco gas station on Carey Avenue in Wilkes-Barre City.

At approximately 5:30 p.m., Detectives Capparell and Maguire were watching the Sunoco gas station from across the street. At 5:31p.m., Detective Maguire called Chris who said he was almost there. At this time, detectives observed a male and female coming down Academy Street. At 5:33 p.m., Detective Maguire called Chris to inquire [about] what he was wearing. Chris advised Detective Maguire that he was at the Sunoco gas station wearing a tie-dye shirt with a backpack and that he was

with a female. At this time, Youngster was seen by detectives talking on his cell phone at the Sunoco gas station in the company of a female. Detective Maguire identified Youngster's voice as being the same male voice (Chris) he spoke to throughout the day. Officer Justin Morris [("Officer Morris")] with the Wilkes-Barre City Police [Department] was a uniformed patrol officer assigned to receive information from the detectives and to then execute the arrest. Officer Morris was first to arrive at the described location where Youngster was then taken into custody. The female with Youngster was identified as Ashley Senn.

While on scene, Youngster denied setting up any narcotics transaction. In response, Detective Capparell then called the cellphone number detectives had been using to communicate with "Chris" for the past three hours. The cellphone that was removed from Youngster's back pocket began to ring. From 2:34 p.m. until the time of Youngster's arrest at approximately 5:36 p.m., there were thirty-four text messages and seven phone calls between detectives and Chris in an effort to arrange a narcotics purchase and delivery.

A search of Youngster incident to lawful arrest resulted in the discovery of pills later identified as ibuprofen and gabapentin, a wax paper packet, glass pipes used to smoke controlled substances, syringes, a marijuana grinder, and three cell phones. Detective Capparell testified that it is common for someone engaged in narcotics deliveries to have multiple cell phones so that they can discard a phone if necessary and so they can use one for non-criminal activity. No controlled substances were detected in the wax paper packet found on Youngster's person. The methamphetamine negotiated for were not found on Youngster's person. Detective Maguire explained that it is not uncommon for drug dealers to take the buyer's money and go to a stash location to get the narcotics then return with them.

Youngster testified on his own behalf at trial. He told the jury that he was forty-one years old, had been struggling with homelessness for at least ten years, had been a long-term cocaine addict, and had been an opiate addict since he was eighteen years old. Youngster testified that at the time of the current offense he was living in a homeless camp in Wilkes-Barre City with approximately ten other individuals. Youngster testified that he had no money and used his bicycle as transportation. Youngster testified that he usually [panhandles] to pay for drugs.

Youngster further testified that the cell phone that the narcotics transaction was set up on was the "campsite phone[,"] and that all ten people living at the homeless campsite used it. Youngster testified that he did not take possession of the "campsite phone" until approximately 5:20 p.m. Youngster testified that he did not send any of the text messages throughout the day and the only phone call he received was at 5:36 p.m. Youngster testified that he was unaware of the text message conversations and phone calls regarding the delivery of narcotics.

Youngster testified that he got the cell phone from his neighbor at the homeless campsite so he could contact his friend who was allowing him to come over to take a shower. Youngster testified that Joe was friends with his neighbor at the homeless camp and that his neighbor purchased the cell phone from Joe for [twenty dollars]. Youngster testified that he was at the Sunoco to buy iced tea and meet his friend who was allowing him to shower at his apartment. Youngster testified that when the phone rang and he was asked what he was wearing, he thought it was his friend who he was meeting at the Sunoco. Youngster testified that the other two cell phones he had in his possession did not work and that one had a cracked screen. Youngster admitted to the jury that he was in possession of ibuprofen, gabapentin, and drug paraphernalia. Youngster testified that the woman he was with at the time of his arrest, Ashley, was just a woman he met a few days prior and that she also was staying at the homeless camp.

Youngster told the jury that he has had many "run-ins with the law[,"] but has never been charged with narcotics trafficking or been convicted of a felony crime. Youngster testified that he had been convicted of access device fraud because the police found multiple drivers' licenses and credit cards in his backpack that did not belong to him. Youngster told the jury that he found the drivers' licenses and credit cards at a homeless shelter and put them in his backpack hoping he would run into someone looking for them. Youngster testified that he was previously in the Army, but lied about his addiction so they would accept him.

Trial Court Opinion, 3/12/25, at 2-7.

At the conclusion of trial, the jury convicted Youngster of criminal use of a communication facility and possession of drug paraphernalia.[3]  On May 16, 2024, the trial court sentenced Youngster to an aggregate term of eighteen to thirty-six months' imprisonment.

Youngster filed post-sentence motions, which were deemed denied by operation of law on October 7, 2024.  Youngster did not file a timely notice of appeal.  However, on November 20, 2024, Youngster filed a motion to reinstate his direct appellate rights, which the trial court granted.  On December 16, 2024, Youngster filed a notice of appeal.  Both Youngster and the trial court complied with Pa.R.A.P. 1925.

Youngster presents the following issues for our review:

1. Did the Commonwealth establish, beyond a reasonable doubt, that [Youngster] committed the offense of criminal use of a communication facility where the Commonwealth failed to present evidence of the commission of an underlying crime or the completion of a substantial step toward the commission of an underlying crime, and [Youngster] was neither charged with possession with intent to deliver nor did the Commonwealth establish that [he] was in possession of a controlled substance?

2. Did the trial court err as a matter of law or abuse its discretion in failing to strike for cause a Pennsylvania State Police Trooper who worked with investigators involved in the present matter, unjustly causing [Youngster] to have to utilize one of his peremptory challenges, thereby depriving [him] of due process and his right to a fair trial?

Youngster's Brief at 3 (issues reordered for ease of disposition).

---

[3] The trial court granted Youngster's motion for judgment of acquittal as to possession of a controlled substance after the Commonwealth rested its case.

- 7 -

In Youngster's first issue, he argues that the evidence was insufficient to sustain his conviction for criminal use of a communication facility. Whether the evidence presented by the Commonwealth is sufficient to sustain a conviction presents a question of law. For a sufficiency challenge:

> Our standard of review is *de novo*, and our scope of review is plenary. To assess the sufficiency of evidence offered to establish guilt, we consider:
>
>> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, is sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.
>
> Evidence may be entirely circumstantial so long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Wunderlich*, 332 A.3d 112, 115-16 (Pa. Super. 2025) (citations and quotation marks omitted).

The Crimes Code defines criminal use of a communication facility as "us[ing] a communication facility to commit, cause or facilitate the **commission or the attempt thereof of any crime which constitutes a felony under this title or under . . . the Controlled Substance, Drug,**

***Device and Cosmetic Act***[4].”  18 Pa.C.S.A. § 7512(a) (emphasis added).  To sustain a conviction for criminal use of a communication facility under Section 7512,

> the Commonwealth must prove beyond a reasonable doubt that: (1) [defendant] knowingly and intentionally used a communication facility; (2) [defendant] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred.  . . .  Under the statute, therefore, an offense is committed if, *inter alia*, a communication facility is used intentionally to cause or facilitate a felony, and the felony has occurred.  “Facilitation” is “any use of a communication facility that makes easier the commission of the underlying felony.”

***Wunderlich***, 332 A.3d at 116 (citations and some quotation marks omitted).

The term “communication facility” includes telephones.  18 Pa.C.S.A. § 7512(c) (providing that “the term ‘communication facility’ means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail”).

Additionally, “the ‘felony element,’ does not require that the defendant be charged with the underlying felony, but it does require evidence of conduct that a communication facility be used to complete or attempt a felony.” ***Commonwealth v. Steele***, 234 A.3d 840, 847 (Pa. Super. 2020).  Evidence that the defendant used a telephone to arrange a sale of illegal drugs that was

---

[4] ***See*** 35 P.S. §§ 780-101 through 780-144.

consummated or attempted satisfies the elements of criminal use of a communication facility. *See Commonwealth v. Moss*, 852 A.2d 374, 382-83 (Pa. Super. 2004) (holding that "[t]he express language of [Section] 7512(a) prohibits use of a communications facility to facilitate the ***attempted*** commission of an underlying felony. Moreover, [Section] 7512 does not require that the defendant be the one to commit the underlying felony").

"A person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901. "Although the Crimes Code does not define 'substantial step,' our courts have focused on what measures the actor has already undertaken in pursuance of the crime which indicate his or her resolve toward the commission of that crime." *Commonwealth v. Bolden*, 532 A.2d 1172, 1176 (Pa. Super. 1987). The substantial step inquiry focuses "on the acts the defendant has done and does not . . . focus on the acts remaining to be done before the actual commission of the crime." *Commonwealth v. Zingarelli*, 839 A.2d 1064, 1069 (Pa. Super. 2003) (citation omitted). "The defendant need not actually be in the process of the crime when arrested in order to be guilty of criminal attempt." *Id*.

Youngster argues that the evidence was insufficient to support his conviction for criminal use of a communication facility because the Commonwealth failed to prove the commission of an underlying crime or the completion of a substantial step toward such a crime. Youngster further

emphasizes that the Commonwealth did not charge him with possession with intent to deliver and did not establish that he was in possession of a controlled substance. While Youngster may have communicated with Detective Maguire regarding a potential drug transaction, he maintains that there is no evidence he took a substantial step toward completing the sale because neither he nor the accompanying female possessed methamphetamine or money, and no arrangement existed for him to retrieve drugs from another location. Youngster asserts that the testimony indicated that, if he was the person on the phone, he likely intended only to take the money — constituting theft, a misdemeanor — not a felony. Youngster claims that because he possessed minimal paraphernalia and no indicia of dealer activity, his presence alone at the arranged location cannot establish a substantial step toward the underlying felony. Youngster contends that mere discussions about a potential drug transaction, without execution or substantial steps, are legally insufficient to sustain a conviction.

The trial court rejected Youngster's claim, concluding that Youngster knowingly used a cellphone to arrange a drug transaction. As the trial court explained:

> Here, Youngster used a cellphone to facilitate the sale and delivery of a controlled substance. Youngster took a substantial step towards the commission of the sale and delivery of a controlled substance prior to his arrest by police. Detectives went undercover as a narcotics purchaser and arranged the purchase of one-eighth of a gram of methamphetamine *via* text messages and phone calls with Youngster. Once detectives arrived at the pre-determined location for the narcotics transaction to occur,

- 11 -

they called the cellphone number used to set up the narcotics transaction and inquired what the individual was wearing. Detectives observed Youngster at the pre-determined location answer the cellphone and describe the outfit he was observed to be wearing. Youngster was then arrested by uniformed police officers. Youngster had the cellphone used for the prior three hours to set up the narcotics transaction on his person at the time of his arrest.

Youngster testified that he was not the "Chris" setting up a narcotics sale and delivery for the prior three hours, that the cellphone was a phone that ten people from the homeless campsite were using, that he did not take possession of the cellphone until about fifteen minutes before the arrest, and that he was at the Sunoco to get iced tea and meet a friend. The jury as fact-finder was free to believe all, part or none of Youngster's testimony.

After considering the direct and circumstantial evidence presented, a jury could reasonably conclude that Youngster had the necessary intent to sell a controlled substance and that he took a substantial step towards the commission of that sale and delivery. Youngster spent three hours setting up the narcotics transaction and arriving at the pre-determined location that was agreed upon during this communication.

The Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that Youngster committed the offense of criminal use of a communication facility.

Trial Court Opinion, 3/12/25, at 17-18 (unnecessary capitalization omitted).

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support Youngster's conviction under 18 Pa.C.S.A. § 7512(a). The Commonwealth was not required to prove actual possession of narcotics or charge Youngster with possession with intent to deliver. It needed only to show that he knowingly used a communication device to facilitate or attempt

a felony drug offense. *See* 18 Pa.C.S.A. § 7512(a); *see also Steele*, 234 A.3d at 848 (Pa. Super. 2020).

The record reflects that Youngster used his cellphone to discuss the type and quantity of drugs and to arrange the time and location of the transaction. Moreover, by traveling to the agreed meeting place, Youngster took a substantial step toward completing the offense. *See Moss*, 852 A.2d at 383 (finding the evidence sufficient where appellant used his cell phone to make the necessary preparations and arranged a meeting point at which he and Johnson would complete the illicit drug transaction at appellant's home, and after Johnson arrived at the home, appellant allowed him inside, which was sufficient to establish that appellant took a substantial step toward completing the drug transaction). Such use of a communication facility to arrange and coordinate a drug transaction satisfies Section 7512(a) and constitutes facilitation. *See id*.; *see also Commonwealth v Figueroa*, 304 A.3d 786 (Pa. Super. 2023) (unpublished memorandum at *5) (holding that "set[ting] up [drug] sales by cell phone is sufficient to prove the criminal use of a communication facility[]") (citation omitted).[5] A conviction under Section 7512 does not require completion of the drug sale; rather, it is enough that the defendant knowingly used a communication facility in furtherance of,

---

[5] *See* Pa.R.A.P. 126(b)(1)-(2) (providing that an unpublished non-precedential memorandum decision of the Superior Court, filed after May 1, 2019, "may be cited for [its] persuasive value").

or in an attempt to commit, a felony drug offense.  Accordingly, Youngster's sufficiency challenge to his conviction under Section 7512(a) fails.

In Youngster's second issue, he argues that the trial court erred when it refused to strike for cause prospective juror number twenty-three, a Pennsylvania State Police trooper who had worked with investigators in the case, thereby forcing him to expend a peremptory challenge and depriving him of due process and his right to a fair trial.  Preliminarily, we must determine whether Youngster preserved this claim for our review.  To the extent Youngster raises concerns about juror number twenty-three's impartiality due to his prior work relationship with investigators, he failed to raise a timely or specific objection on that ground.  As this Court has explained:

> The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). [Moreover, a] new and different theory of relief may not be successfully advanced for the first time on appeal.

*Commonwealth v. Berrios*, 297 A.3d 798, 805 (Pa. Super. 2023) (some citations and quotation marks omitted).

During *voir dire*, juror number twenty-three disclosed at the outset of questioning by defense counsel that he knew Detective Maguire from his time with the department, as well as another detective.  *See* N.T. *Voir Dire*, 4/8/24, at 43-44.  The trial court immediately interjected and questioned the prospective juror as to whether these relationships would make it difficult for

- 14 -

him to serve on the jury in this matter. *See id*. at 44.[6] To this inquiry, juror number twenty-three responded in the negative, twice. *See id*. Defense counsel then extensively questioned juror number twenty-three as to whether he believed that he could be fair and impartial in this case despite his extensive training in narcotics investigation, and the prospective juror repeatedly indicated that he could disregard his training and apply the law to the particular facts of this case. *See id*. at 44-47.

Notwithstanding the disclosure by juror number twenty-three of his prior working relationship with Detective Maguire, Youngster challenged this juror for cause solely on the generalized ground that his law enforcement background and expertise might influence jury deliberations. Specifically, Youngster's counsel moved to strike juror number twenty-three for cause, as follows:

> I just make a motion to strike for cause [juror number twenty-three] on the basis that he is trained as a Pennsylvania State

---

[6] Though not dispositive herein, *see infra*, we note that a presumption of prejudice arises when a prospective juror has a close familial, financial, or situational relationship with a participant in the litigation (*i.e.*, the parties, counsel, victims, or witnesses). *See Shinal v. Toms*, 162 A.3d 429, 443 (Pa. 2017). However, the mere existence of some familial, financial, or situational relationship does not require dismissal in every case. *See id*. Where, as in the present case, there is an indirect or attenuated relationship, the trial court must question the prospective juror to reveal whether the juror believes the relationship would affect the juror's ability to be impartial. *See id*. at 448. A remote relationship to an involved party is not a basis for disqualification where the prospective juror indicates during *voir dire* that he or she will not be prejudiced. *See id*. at 443. In such situations, an appellate court will defer to the trial court's determination absent a "palpable abuse of discretion." *Id.* at 448.

Police Officer. He said that he is a drug enforcement recognition expert; and, obviously, he brings an expertise into this jury pool, which is quite unique.

I would think it would be hard to separate his expertise from what he's going to hear in the trial today; and, I'm concerned that what he would say would influence the jury whether that be one way or the other.

I'm just concerned he wouldn't be able to keep the knowledge that he has from his job from interfering in the fair and impartial evaluation of the evidence in this case.

*Id*. at 47. Based on the responses provided by juror number twenty-three to the questions posed by the trial court and defense counsel, the trial court denied the request to remove the juror for cause. *See id*. at 48.

At no time during jury selection did Youngster challenge juror number twenty-three for cause on the basis of his prior working relationship with Detective Maguire. Instead, for the first time in his post-sentence motion, Youngster asserted that the trial court should have removed juror number twenty-three for cause because he "knew and had worked with some of the law enforcement participants[,]" and possessed specialized expertise. Post Sentence Motion, 5/28/24, at unnumbered 2.

On appeal, Youngster reframes his post-sentence claim, arguing that juror number twenty-three's prior professional relationship with Detective Maguire and his shared specialized narcotics training established a "real relationship" with a key Commonwealth witness that required the juror's removal for cause. Youngster's Brief at 18. Youngster maintains that because Detective Maguire's credibility and expertise were central to the

Commonwealth's case, juror number twenty-three's recent professional association and similar training created an unacceptable risk of bias.

Here, because Youngster did not assert — until after trial — that the juror's prior professional relationship with Detective Maguire or other investigators required removal for cause, he failed to preserve this claim for appellate review. Accordingly, Youngster has waived his second issue under Pa.R.A.P. 302(a). We therefore affirm Youngster's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/03/2026