J-A11018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERELL SHEPARD | : | |
| | : | |
| Appellant | : | No. 476 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 11, 2022
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000724-2020

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED: JUNE 26, 2023**

Appellant, Gerell Shepard, appeals from the aggregate judgment of sentence of 10 to 42 years' incarceration, imposed after a jury convicted him of three counts of possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30), and one count of criminal use of a communication facility (CUCF), 18 Pa.C.S. § 7512(a).  Appellant challenges the sufficiency of the evidence to sustain his CUCF conviction, as well as the discretionary aspects of his sentence.  After careful review, we affirm.

The trial court summarized the facts and procedural history of Appellant's case, as follows:

On January 20, 2020, the Altoona Police Department and the Office of the Attorney General filed a criminal complaint charging [Appellant] with the following criminal offenses:

_____

[*] Retired Senior Judge assigned to the Superior Court.

Corrupt Organizations, 18 Pa.C.S.[] § 911(b)(3); Corrupt Organizations - Conspiracy, 18 Pa.C.S.[] § 911(b)(4); Criminal Conspiracy [PWID], 18 P[a.C].S.[] § 903(a)(1); [PWID], 35 P.S. [§] 780-113(a)(30) (4 counts); and [CUCF], 18 Pa.C.S.[] § 7512.

The charges arose from a statewide investigating grand jury. Pertaining to the instant Appellant, the Grand Jury Presentment alleged that co-defendants Shawn Jackson, Appellant, and Darwin Herring, as well as … others[,] were part of a larger methamphetamine distribution network, which operated in Blair County from mid-2018 through October of 2019. The Commonwealth alleged that these individuals conspired with each other and others in this "business[."] The Commonwealth acknowledged that not all members participated during the entire extent of the organization and that many moved in and out, playing a particular role. The Commonwealth identified local dealers, mid-level suppliers, and higher[-]level sources, as the roles within the organization and identified both co-defendant Herring and Appellant, as dealers for Jackson.

The criminal charges were waived to the Court of Common Pleas from the magisterial district judge level on March 17, 2020. The Attorney General filed a criminal information consistent with the above[-]referenced charges on May 7, 2020. The Commonwealth also provided notice pursuant to Rule 582(B) of the Pennsylvania Rules of Criminal Procedure of its intent to try [Appellant's] case with seventeen (17) other defendants.

\*\*\*

On December 8, 2020, the defense filed a motion to sever. The court held an argument on March 12, 2021. At the time of oral argument on the matter, the Commonwealth revised its notice of joinder and represented to the court and defense counsel that it would only seek to try … Appellant's case with co-defendants … Herring and … Jackson. The court also received from the Commonwealth the Grand Jury Presentment in support of the Commonwealth's position that the cases of … Appellant, co-defendant … Jackson, and co-defendant … Herring are related and should be tried together. After considering the record and the briefs filed by counsel, this court denied the motion to sever by Opinion and Order dated April 26, 2021. As the time for trials w[as] forthcoming and with the disposition of several co[-]defendants' cases through negotiated guilty pleas/sentences, the

Commonwealth requested separate trials for [co-d]efendant Herring and Appellant.

A jury trial commenced for … Appellant on October 20, 2021. At the outset of trial, the Commonwealth withdr[e]w and amended certain counts on the Criminal Information. The jury was asked to determine whether Appellant was guilty of: Count 1 - [PWID] (Methamphetamine) - June 2018 through October 2018; Count 2 - [PWID] (Methamphetamine) - November 3, 2018; Count 3 - [PWID] (Fentanyl) - November 6, 2018; Count 4 - Delivery of a Controlled Substance (Methamphetamine) - November 6, 2018; Count 5 - Conspiracy to [commit PWID] (Methamphetamine and Fentanyl) - June 2018 through November 6, 2018[;] Count 6 – [CUCF] — June 2018 through November 6, 2018.[1]

> [1] Count 1 was primarily based upon historical information from the Confidential Informant's [(C.I.)] drug buys with the Appellant, which occurred without police oversight and involvement. Counts 2, 3, and 4 were based upon controlled purchases alleged with the Appellant by the C.I. while the C.I. was working with police. Counts 5 and 6 covered both periods of time when the C.I. was allegedly independently buying drugs and when the C.I. was doing so with police involvement.

In support of its case, the Commonwealth presented the testimony of the [C.I.], as well as law enforcement, who worked with the C.I. The jury heard testimony about why the C.I. was working with police and the procedures used by the police to protect the integrity of the controlled purchases of drugs. The C.I. explained the nature and type of communications she had with … Appellant and co-defendant Jackson. The Commonwealth submitted exhibits, including photographs taken by the police of the electronic communications between … Appellant and the C.I. The Affiant also explained to the jury the use of veiled language when parties are engaged in the sale of illegal drugs. Other Commonwealth evidence addressed the forensic identification and weight of the drugs involved. … Appellant testified in his defense. His defense centered around his promiscuity with women during the time of the alleged drug buys. He denied the criminal activity and attributed his interaction with the C.I. as a sexual relationship. He described other interactions when she was helping him move. He denied knowing co-defendant Jackson. Rebuttal evidence from the Commonwealth was presented to show that the Appellant and the co-defendant Jackson were "friends" on Facebook. …

Appellant further denied the significance of … Jackson['s] being listed as a "friend" on Facebook.

On October 22, 2021, … Appellant was found guilty by a jury of:

Count 2 – [PWID] (Methamphetamine) - November 3, 2018;

Count 3 - [PWID] (Fentanyl) - November 6, 2018;

Count 4 – [PWID] (Methamphetamine) - November 6, 2018;

Count 6 – [CUCF] - June 2018 through November 6, 2018.

… Appellant was found not guilty of: Count 1 [- PWID] (Methamphetamine) - June 2018 through October 2018; and Count 5 - Conspiracy to [commit PWID] (Methamphetamine and Fentanyl) – June 2018 through November 6, 2018.

Following his convictions, the court ordered a pre[-]sentence investigation[,] the submission of sentencing memoranda, and set sentencing to occur on January 11, 2022.  At the sentencing hearing, the Commonwealth and the defense presented arguments.  … Appellant also testified and submitted documents. After considering the presentations, the sentencing memoranda, the trial record, the amended pre-sentence investigation and all mitigating information, the court imposed consecutive[,] middle[-]of[-]the[-]standard[-]range sentences on each count.

Trial Court Opinion (TCO), 8/30/22, at 1-5 (some spacing altered and unnecessary capitalization omitted).

As stated *supra*, the court imposed an aggregate term of 10 to 42 years' incarceration.  Appellant filed a timely post-sentence motion, requesting reconsideration of his sentence.[1]  The trial court denied the post-sentence

---

[1] We note that the trial court's docket did not originally contain an entry for a post-sentence motion and, therefore, Appellant's notice of appeal appeared to be facially untimely, as it was filed more than 30 days after the imposition of his sentence.  **See** Pa.R.Crim.P. 720(A)(3) ("If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence…."). Accordingly, by Order dated
*(Footnote Continued Next Page)*

- 4 -

motion on March 16, 2022. Appellant filed a timely notice of appeal on April 14, 2022. He thereafter complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court filed its Rule 1925(a) opinion on August 30, 2022.

Herein, Appellant states two issues for our review:

I. Did the Commonwealth adduce sufficient evidence to prove the requisite *mens rea* for Count 6, [CUCF]?

II. Did the trial court abuse its discretion by imposing an unduly harsh, excessive, and unreasonable sentence of 10 to 42 years' imprisonment, which was incongruent with the conduct for which [Appellant] was convicted…, and … constituted a statutory maximum sentence that did not comport with the trial court's stated purpose of lengthy supervision?

Appellant's Brief at 5 (emphasis omitted).

Appellant first challenges the sufficiency of the evidence to sustain his conviction of CUCF, which is defined as follows:

**(a) Offense defined.--**A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where

---

May 16, 2022, this Court directed Appellant to show cause as to why the instant appeal should not be quashed as untimely. Appellant filed a timely response, wherein he attached a copy of a post-sentence motion that was time-stamped by the Blair County Clerk of Courts on January 19, 2022 - within 10 days of the imposition of sentence. By order dated May 19, 2022, this Court directed the trial court to amend its docket to include an entry for the January 19, 2022 post-sentence motion. The trial court's docket has now been amended. This Court's show-cause order was subsequently discharged. As the post-sentence motion was timely filed within 10 days of the imposition of sentence, the appeal period was tolled.

the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S. § 7512(a) (footnote omitted).  This Court has recognized that "[f]acilitation has been defined as 'any use of a communication facility that makes easier the commission of the underlying felony.'" ***Commonwealth v. Moss***, 852 A.2d 374, 382 (Pa. Super. 2004) (quoting ***United States v. Davis***, 929 F.2d 554, 559 (10th Cir. 1991)).

Here, Appellant insists that the Commonwealth failed to present sufficient evidence to prove the facilitation element of CUCF.  Specifically, he avers that there was no evidence establishing that he "made the delivery of narcotics 'easier' through the use of a messaging app on his cell phone." Appellant's Brief at 41.  Appellant posits that "the context of the existing relationship between [him] and [the CI]" supports that the two were communicating for and about matters other than the drug deliveries.  ***Id.***  He also stresses that "any veiled references to narcotics were solely initiated by [the C.I.] and [Appellant] either did not reply or replied in non-adoptive terms." ***Id.***  According to Appellant,

> [t]he conversations – which is a generous term to apply to the broken strings of messages – do not establish that the two were arranging narcotics sales.  The messages are more indicative of mindless interaction between two familiar parties, ancillary to any narcotics sales.  A common-sense reading of the messages shows this – rides, moving, selfies, and emojis, which are not the hallmarks of messages hammering out the logistics of a drug deal. Falling short of the facts in [***United States v.***] ***Wheat***[, 988 F.3d

299 (6th Cir. 2021),[2]] the discussions between [the C.I.] and [Appellant] did not come close to *facilitating* the deliveries.

*Id.* (emphasis in original).

We disagree with Appellant's argument. Initially, we observe that,

[w]hether the evidence was sufficient to sustain the charge presents a question of law. ***Commonwealth v. Toritto***, 67 A.3d 29 (Pa. Super. 2013) (*en banc*). Our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Walls***, 144 A.3d 926 (Pa. Super. 2016). In conducting our inquiry, we examine[,]

whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

_____

[2] In ***Wheat***, the appellant

sent his phone number to [a large-scale drug-dealer named] Reels[,] and later spoke with Reels over the phone the night before their exchange of [a] heroin sample. During the call, Wheat alerted Reels of the heroin that he had come across and arranged for a meeting with Reels to exchange that sample.

***Wheat***, 988 F.3d at 313. Based on this evidence, the court found that "Wheat knowingly used his phone to make it easier to distribute the sample to Reels." ***Id.***

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quotation omitted).

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021), *appeal denied*, 285 A.3d 879 (Pa. 2022).

Here, the trial court found sufficient evidence to prove that Appellant committed the crime of CUCF, explaining:

Under the Commonwealth's theory of the instant case, … Appellant used his cell phone to contact the [C.I.] to arrange deliveries of methamphetamine and fentanyl between the summer of 2018 through November 6, 2018. The Commonwealth charged one count for the entire timeframe. In support of this theory, the Commonwealth presented the testimony of … the [C.I. She] testified that she was addicted to drugs, particularly methamphetamine.[2] It is a battle she "fights every day[."] ([N.T. Trial,] 10/20/21[, at] 92-93). [The C.I.] told the jury about coded text messages and described the transactions, exchanging money for drugs. ([*See, e.g.*, *id.* at] 112-[]15, 123-[]35)[.] She further told the jury about communications with the co-defendant Jackson and her knowledge of the relationship between Jackson and … Appellant based upon the circumstances of her receipt of drugs and the payment of money. ([*Id.* at] 112-[]13). She advised the jury that co[-]defendant Jackson directed her to deal with … Appellant in his absence. ([*Id.* at] 99). [The C.I.] explained that she would communicate by Facebook, text message or telephone calls with Appellant. ([*Id.* at] 99). She described the content of certain messages between [she] and … Appellant. ([*See, e.g.*, *id.* at] 115, 122-[]23, 124-[]25, 126, 130-[]31).

[2] The jury heard that [the C.I.] bought drugs from … Appellant and co-defendant Jackson from the summer of 2018 through October of 2018 when she began making controlled purchases for the police. She was charged $100 to $150 per gram and the drugs she received had the same effect on her body as the drugs she had used over the years. ([*Id.* at] 100-[]01, 146). The jury did not convict ... Appellant of buys for that time frame, however.

The Commonwealth also admitted exhibits of the electronic messages. For instance, Commonwealth Exhibit #10 was alleged to be a text conversation between Appellant and the C.I. on

November 3rd wherein Appellant stated: "150, I can't go lower." Additionally, [the C.I.] testified that this message was … Appellant's response to her inquiry about a lower price. ([*Id.* at] 130-[]31). [The C.I.] told the jury that she paid co-defendant Jackson for drugs, but got drugs from … Appellant on November 3rd. ([*Id.* at] 145). Sergeant Moser identified the photographs he took of conversations between the C.I. and … Appellant, including those relating to November 3rd and the $150 price. ([N.T. Trial,] 10/21/21[, at] 97). The jury convicted … Appellant at Count 2 for delivery of methamphetamine on November 3rd. Commonwealth Exhibit #17 was another alleged conversation between Appellant and the C.I. referencing the "G" and "2 BGS." [The C.I.] told the jury that the purpose of the electronic contact was because … Appellant had methamphetamine available. She again identified pictures from her cell phone taken by Sgt. Moser at the time of the controlled buy, documenting communications between her and … Appellant. She testified that she spoke to … Appellant on the phone in the presence of the police and that they exchanged electronic messages. She identified a message where she said "the same as the last time, then" to … Appellant about arranging a drug transaction for a gram. Appellant and the C.I. [went] on to discuss where … Appellant [was] located and the purchase of a gram of methamphetamine and two bags of heroin. ([N.T. Trial,] 10/20/21[, at] 136-[]39). She [was] directed to a location by … Appellant and [gave] him $190 for one gram of methamphetamine and two bags of heroin. ([*Id.* at] 141-[]43, 146). Sgt. Moser was qualified as an expert witness in narcotics investigations[.] ([*Id.* at] 42, 44). He testified that he took photographs of the C.I.[']s phone and the communications between the [C.I.] and Appellant. He identified the conversation occurring over Facebook[.] ([N.T. Trial,] 10/21/21[, at] 106-[]07). Sgt. Moser told the jury that based upon his training and experience, the ["]G["] referred to a gram and the ["]2 BGS["] meant bags of heroin[.] ([*Id.* at] 107). As it relates [to] these communications, the jury convicted [Appellant] of delivery of methamphetamine and fentanyl on November 6th.

*          *          *

Because the Commonwealth charged and alleged a continuing count of [CUCF], it was not necessary for the jury to determine if each text the Commonwealth presented throughout its case arose to the commission of the crime. It was only necessary for the jury to believe that at least on one occasion[,] … Appellant had used a communication device to facilitate a delivery of drugs. According

- 9 -

to the verdict slip, the jury concluded that[,] at least on two occasions (November 3rd and November 6th)[,] … Appellant had arranged for the deliveries of drugs to the C.I. The afore-listed examples of electronic communications are sufficient evidence for the jury to find beyond a reasonable doubt that Appellant possessed sufficient *mens rea* to be guilty of [CUCF]. Based upon the above evidence and the reasonable inferences from that evidence, the jury reasonably [and] properly concluded that … Appellant had the *mens rea* of intentionally, knowingly, or recklessly using a communication device to arrange deliveries of controlled substances.

TCO at 8-10 (unnecessary capitalization omitted).

The record supports the court's decision, and confirms that the Commonwealth presented sufficient evidence to prove that Appellant used an electronic device to facilitate – or make easier – his delivery of drugs to the C.I. Appellant and the C.I. exchanged messages on their phones about the availability, pricing, and quantities of drugs that the C.I. wished to purchase from Appellant. Appellant also used his phone to tell the C.I. his location, where she then met him and completed the drug transaction. Clearly, this evidence demonstrates that Appellant used an electronic device to facilitate the commission of his drug deliveries to the C.I. Thus, no relief is due on his first issue.

In Appellant's second issue, he challenges the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Evans****,* 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann****,* 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, … 831 A.2d 599 ([Pa.] 2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul****,* 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Instantly, Appellant has presented a Rule 2119(f) statement in his brief in which he argues that "the trial court imposed a statutory maximum sentence without making any connection between its stated purpose for the sentence and why such a sentence was necessary for Appellant." Appellant's Brief at 34 (emphasis and citations omitted). Appellant stresses that he

was convicted of, namely, two relatively minor drug deliveries. His conduct, by the trial court's own description, was less severe than that of many other individuals charged in [the] larger drug[-]distribution ring. Moreover, [Appellant] was acquitted of

> involvement in that ring and of conspiring to distribute narcotics with Jackson.

*Id.* Appellant posits that these claims raise substantial questions for our review. *Id.* (citing *Commonwealth v. Griffin*, 804 A.2d 1, 7 (Pa. Super. 2002) ("A claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges presents a 'substantial question' for [] review."); *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa. Super. 1999) (*en banc*) ("An allegation that the sentencing court did not adequately set forth its reasons on the record does present a substantial question.")).

Initially, at no point at the sentencing proceeding, in Appellant's post-sentence motion, or in the memorandum accompanying his motion, did he argue that the court failed to state sufficient reasons on the record for the sentence it imposed. Accordingly, this claim is waived. *See Griffin*, 65 A.3d at 936 ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted).

In Appellant's post-sentence motion, he argued that his sentence "is unduly harsh given [his] circumstances" and that the court's imposition of consecutive sentences "does not take into consideration the rehabilitative needs of [Appellant]." Post-Sentence Motion, 1/19/22, at 2 (unnumbered). In his memorandum accompanying the motion, Appellant elaborated on his circumstances and rehabilitative efforts that he believes warrant a more lenient sentence. *See* Memorandum In Support of Post-Sentence Motion,

- 12 -

2/23/22, at 2 (unnumbered). He also noted several factors that he alleged the court improperly considered, such as the fact that several of his prior arrests "resulted in charges being dismissed or in [Appellant's] being found not guilty." *Id.*

Thus, the only argument that Appellant preserved for our review in his post-sentence motion, and which he meaningfully develops in the Argument section of his brief, is his claim that the trial court's imposition of consecutive sentences resulted in an aggregate term that is unduly harsh, considering the circumstances of the case and Appellant's rehabilitative needs and efforts.[3] We conclude that this claim raises a substantial question for our review. *See Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) ("[W]e conclude that [the a]ppellant's challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs and mitigating factors upon fashioning its sentence, presents a substantial question.").

In reviewing the merits of Appellant's sentencing challenge, we are mindful that,

---

[3] Appellant also argues, in his appellate brief, that the court abused its discretion by imposing a maximum sentence of 42 years' incarceration based on its intent that Appellant serve a "long tail of parole." Appellant's Brief at 51. He insists that the court failed to appreciate that Appellant "will not necessarily be paroled" and could ultimately serve the entire, maximum sentence of 42 years' incarceration in prison. *Id.* This argument was not set forth in Appellant's post-sentence motion, or his memorandum in support thereof. Accordingly, it is waived. *See Griffin*, *supra*.

- 13 -

[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

In the instant case, Appellant presents the following argument:

Here, the trial court imposed an aggregate sentence of 10 to 42 years' imprisonment. This sentence was manifestly excessive and clearly unreasonable. [Appellant] was convicted of delivering controlled substances that first consisted of 7.17 grams of methamphetamine, then .79 grams of methamphetamine and .08 grams of fentanyl. [Appellant] does not downplay the seriousness of delivering controlled substances, but he stresses that the circumstances of the offenses here clearly do not justify a four-decades-long sentence of confinement.

[Appellant] put on evidence at sentencing showing that he had established a consistent, full-time job, and he was doing well in the community. He explained to the trial court that he was working to support his own children and the children of his partner. The trial court was made aware that [Appellant] had a troubled past and challenging childhood—an explanation but not an excuse for his criminal history. [Appellant] presented to the trial court numerous letters from friends and coworkers explaining that he was doing well in the community and was a good person. One even came from the probation officer supervising him on post-trial release. Still, the trial court was unpersuaded and focused on the seriousness of his current charges and the protection of the public based upon his criminal history. The sentence was focused on conduct and not personal history, thus being far from individualized.

The trial court imposed sentences at each of the four counts that had minimum terms in the standard range, but extended to the statutory maximum at each offense. In doing so, the trial court created the distinct possibility that [Appellant] will serve 42 years of imprisonment in connection with two, relatively minor, drug deliveries.

- 14 -

Appellant's Brief at 48-50.

In assessing Appellant's arguments, we have reviewed the certified record, the briefs of the parties, and the applicable law. We have also considered the detailed and well-reasoned opinion of the Honorable Jackie Atherton Bernard of the Court of Common Pleas of Blair County. *See* TCO at 11-16. We conclude that Judge Bernard's discussion of her sentencing considerations and rationale refutes Appellant's arguments that the court did not impose an individualized sentence or consider the circumstances of his case and his rehabilitative needs and efforts. Based on Judge Bernard's opinion and the record before us, we discern no abuse of discretion in Appellant's sentence. Thus, we adopt Judge Bernard's decision addressing Appellant's sentencing challenge as our own and affirm the judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2023

- 15 -

Circulated 06/14/2023 07:41 AM

IN THE COURT OF COMMON PLEAS OF BLAIR COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

NO. 2020 CR 724

vs.

GERELL SHEPARD,
      Defendant

HON. JACKIE ATHERTON BERNARD      PRESIDING JUDGE

MICHAEL T. MADEIRA, ESQUIRE      SR. DEPUTY ATTORNEY GENERAL

RYAN H. JAMES, ESQUIRE      COUNSEL FOR DEFENDANT

Date: August 29, 2022

## OPINION PURSUANT TO RULE 1925(a) OF THE PA RULES OF APPELLATE PROCEDURE

This Opinion is issued by the Court following the Defendant-Appellant's (hereinafter Appellant) Statement of Errors. Gerell Shepard, Appellant, appeals from the judgment of sentence entered on January 11, 2022, following jury convictions.

## PROCEDURAL HISTORY/FACTUAL HISTORY

On January 20, 2020, the Altoona Police Department and the Office of the Attorney General filed a Criminal Complaint charging the Defendant with the following Criminal Offenses:

1

Corrupt Organizations, 18 Pa.C.S.A. §911(b)(3); Corrupt Organizations-Conspiracy, 18 Pa.C.S.A. §911(b)(4); Criminal Conspiracy Possession with Intent to Deliver, 18 P.S.A. §903(a)(1); Possession with Intent to Deliver, 35 P.S. 780-113(a)(30) (4 counts); and Criminal Use of a Communication Facility, 18 Pa.C.S.A. §7512.

The charges arose from a statewide investigating grand jury. Pertaining to the instant Appellant, the Grand Jury Presentment alleged that that Co-Defendants Shawn Jackson, Appellant, and Darwin Herring, as well as, others were part of a larger methamphetamine distribution network, which operated in Blair County from mid-2018 through October of 2019. The Commonwealth alleged that these individuals conspired with each other and others in this "business". The Commonwealth acknowledged that not all members participated during the entire extent of the organization and that many moved in and out, playing a particular role. The Commonwealth identified local dealers, mid-level suppliers, and higher level sources, as the roles within the organization and identified both Co-Defendant Herring and Appellant, as dealers for Jackson.

The Criminal charges were waived to the Court of Common Pleas from the magisterial district judge level on March 17, 2020. The Attorney General filed a Criminal Information consistent with the above referenced charges on May 7, 2020. The Commonwealth also provided notice pursuant to Rule 582(B) of the Pennsylvania Rules of Criminal Procedure of its intent to try the Defendant's case with seventeen (17) other defendants. Those individuals included: Adrian Speedwell, CR 45-2020; Carlos Custalow, CR 725-2020; Kahil Graham, CR 561-2020; Elroy Wise, CR 440-2020; Shawn Jackson, CR 267-2020; Ricardo Cade, CR 46-2020; Darwin Herring, CR 722-2020; Kimberly Riggleman, CR 439-2020; Terry Bookwalter, CR 721-2020; Troy Hicks,

2

CR 723-2020; Jenna Raia, CR 436-2020; Mark Watson, CR 1241-2020; Aleeta Queen-Dively, CR 773-2020; William Snyder, CR 438-2020; Barbara Bordell, CR 437-2020; Nicole Merkerson-Beale, CR 560-2020; Mark Anthony Watson, Jr., CR 1241-2020.

On December 8, 2020, the Defense filed a Motion to Sever. The Court held an argument on March 12, 2021. At the time of Oral Argument on the matter, the Commonwealth revised its notice of joinder and represented to the Court and defense counsel that it would only seek to try the Appellant's case with Co-Defendants Darwin Herring and Shawn Jackson. The Court also received from the Commonwealth the Grand Jury Presentment in support of the Commonwealth's position that the cases of the instant Appellant, Co-Defendant Shawn Jackson, and Co-Defendant Darwin Herring are related and should be tried together. After considering the record and the briefs filed by counsel, this Court denied the Motion to Sever by Opinion and Order dated April 26, 2021. As the time for trials were forthcoming and with the disposition of several co-defendants' cases through negotiated guilty pleas/sentences, the Commonwealth requested separate trials for Defendant Herring and Appellant.

A jury trial commenced for the instant Appellant on October 20, 2021. At the outset of trial, the Commonwealth withdraw and amended certain counts on the Criminal Information. The jury was asked to determine whether Appellant was guilty of: Count 1-Delivery of a Controlled Substance (Methamphetamine) – June 2018 through October 2018; Count 2- Delivery of a Controlled Substance (Methamphetamine) – November 3, 2018;

Count 3- Delivery of a Controlled Substance (Fentanyl) – November 6, 2018; Count 4 – Delivery of a Controlled Substance (Methamphetamine) – November 6, 2018; Count

3

5 – Conspiracy to Deliver a Controlled Substance (Methamphetamine and Fentanyl) – June 2018 through November 6, 2018. Count 6 - Criminal Use of a Communications Facility – June 2018 through November 6, 2018.[1]

In support of its case, the Commonwealth presented the testimony of the Confidential Informant, as well as law enforcement, who worked with the C.I. The Jury heard testimony about why the C.I. was working with police and the procedures used by the police to protect the integrity of the controlled purchases of drugs. The C.I. explained the nature and type of communications she had with the Appellant and Co-Defendant Jackson. The Commonwealth submitted exhibits, including photographs taken by the police of the electronic communications between the Appellant and the C.I. The Affiant also explained to the Jury the use of veiled language when parties are engaged in the sale of illegal drugs. Other Commonwealth evidence addressed the forensic identification and weight of the drugs involved. The Appellant testified in his defense. His defense centered around his promiscuity with women during the time of the alleged drug buys. He denied the criminal activity and attributed his interaction with the C.I. as a sexual relationship. He described other interactions when she was helping him move. He denied knowing Co-Defendant Jackson. Rebuttal evidence from the Commonwealth was presented to show that the Appellant and the Co-Defendant Jackson were "friends" on Facebook. The Appellant further denied the significance of Co-Jackson, being listed as a "friend" on Facebook.

---

[1] Count 1 was primarily based upon historical information from the Confidential Informant's drug buys with the Appellant, which occurred without police oversight and involvement. Counts 2, 3, and 4 were based upon controlled purchases alleged with the Appellant by the C.I. while the C.I. was working with police. Counts 5 and 6 covered both periods of time when the C.I. was allegedly independently buying drugs and when the C.I. was doing so with police involvement.

4

On October 22, 2021, the Appellant was found guilty by a jury of:

Count 2- Delivery of a Controlled Substance (Methamphetamine) – November 3, 2018;

Count 3- Delivery of a Controlled Substance (Fentanyl) – November 6, 2018;

Count 4 – Delivery of a Controlled Substance (Methamphetamine) – November 6, 2018;

Count 6 - Criminal Use of a Communications Facility – June 2018 through November 6, 2018. The Appellant was found not guilty of: Count 1 Delivery of a Controlled Substance (Methamphetamine) – June 2018 through October 2018; and Count 5 – Conspiracy to Deliver a Controlled Substance (Methamphetamine and Fentanyl) – June 2018 through November 6, 2018.

Following his convictions, the Court ordered a presentence investigation; the submission of sentencing memoranda, and set sentencing to occur on January 11, 2022. At the sentencing hearing, the Commonwealth and the defense presented arguments. The Appellant also testified and submitted documents. After considering the presentations, the sentencing memoranda, the trial record, the amended pre-sentence investigation and all mitigating information, the Court imposed consecutive middle of the standard range sentences on each count.

## ISSUES PRESENTED FOR APPEAL

The Court's interpretation of the Statement of Errors filed by the defense, are as follows:

1. Whether the record supported the jury's verdict that the requisite *mens rea* for Count 6, Criminal Use of Communication facility was established beyond a reasonable doubt?

5

**Suggested Answer: In the Affirmative.** There was ample evidence in the record to support the jury's verdict that Appellant knowingly, intelligently or recklessly used a communication device to facilitate the delivery of a controlled substance.

2. Whether the aggregate sentence imposed was in accordance with the law and within the Court's discretion?

**Suggested Answer: In the Affirmative.** The Court properly exercised its discretion, taking into account the record of the trial, the sentencing guidelines, the PSI, the sentencing code, presentations made on behalf of the Appellant and all mitigating factors and the rehabilitative potential for the Appellant, as well as, the need to protect society.

## DISCUSSION

I. **The record supported the Jury's conclusion that the Defendant had the requisite mens rea to commit the crime of Criminal Use of Communication Facility.**

Pursuant to Section 7512 of Title 18, the crime of Criminal Use Communication Facility requires the Commonwealth to prove beyond a reasonable doubt: that the defendant intentionally, knowingly, or recklessly used a communication facility; that the defendant intentionally, knowingly, or recklessly used the communication facility to facilitate the commission of the crime of Possession with Intent to Deliver a Controlled Substance; and finally, that the crime of Possession with Intent to Deliver actually

6

occurred. In the closing charge, the Jury was instructed, consistent with the Standard Jury Instruction 15.7512 on the above elements and the definition of a communication facility being: a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photo-electronic, or photo-optical systems or the mail. This closing instruction also included legal definitions for the mens rea terms of intentional, knowingly, and recklessly. (T.T. 10/22/21 at p. 46-47). This Jurist told the jury:

> A defendant acts intentionally when it is his conscious object to facilitate the commission of the crime charged by using the communication facility. A defendant acts knowingly when he is aware that it is practically certain that his use of a communication facility will facilitate the commission of the crime charged and fourth, the defendant acts recklessly when he consciously disregards a substantial and unjustifiable risk that his use of the communication facility will, in fact, facilitate the commission of the crime charged. (T.T. 10/22/21 at p. 47, l. 14-22).

The appellate courts have held that evidence was sufficient to support a defendant's conviction for Criminal Use of a Communication Facility, when the defendant engaged in several telephone conversations with a confidential informant and the conversations led to a controlled buy of drugs between the defendant and the confidential informant. See *Commonwealth v Moss, 852 A.2d 374 (Pa. Super 2004)* (further stating that mens rea requirement applied to each material element of the offense and also overturning a conviction under Section 7512 where there was no evidence to establish that the delivery of drugs actually occurred between the defendant and his supplier).

7

Under the Commonwealth's theory of the instant case, the Appellant used his cell phone to contact the Confidential Informant to arrange deliveries of methamphetamine and fentanyl between the summer of 2018 through November 6, 2018. The Commonwealth charged one count for the entire timeframe. In support of this theory, the Commonwealth presented the testimony of Tiffany Iraca, the Confidential Informant. Ms. Iraca testified that she was addicted to drugs, particularly methamphetamine.[2] It is a battle she "fights every day". (T.T. 10/20/21 p. 92-93). Ms. Iraca told the jury about coded text messages and described the transactions, exchanging money for drugs. (In example, T.T. 10/20/21 p. 112-115, 123-135) She further told the jury about communications with the Co-Defendant Jackson and her knowledge of the relationship between Jackson and the Appellant based upon the circumstances of her receipt of drugs and the payment of money. (T.T. 10/20/21 p.112-113). She advised the jury that Co Defendant Jackson directed her to deal with the Appellant in his absence. (T.T. 1/20/21 p. 99). Ms. Iraca explained that she would communicate by Facebook, text message or telephone calls with Appellant. (T.T. 10/20/21 p. 99). She described the content of certain messages between her and the Appellant. (For instance, T.T. 10/20/21 p. 115, 122-123, 124-125, 126, 130-131).

The Commonwealth also admitted exhibits of the electronic messages. For instance, Commonwealth Exhibit #10 was alleged to be a text conversation between Appellant and the C.I. on November 3rd wherein Appellant stated: "150, I can't go lower."

---

[2] The jury heard that Ms. Iraca bought drugs from the Appellant and Co-Defendant Jackson from the summer of 2018 through October of 2018 when she began making controlled purchases for the police. She was charged $100 to $150 per gram and the drugs she received had the same effect on her body as the drugs she had used over the years. (T.T. 10/20/21 p. 100-101, 146). The jury did not convict the Appellant of buys for that time frame, however.

8

Additionally, Ms. Iraca testified that this message was the Appellant's response to her inquiry about a lower price. (T.T. 10/20/21 p. 130-131). Ms. Iraca told the jury that she paid Co-Defendant Jackson for drugs, but got drugs from the Appellant on November 3rd. (T.T. 10/20/21 p. 145). Sergeant Moser identified the photographs he took of conversations between the C.I. and the Appellant, including those relating to November 3rd and the $150 price. (T.T. 10/21/21 p. 97). The jury convicted the Appellant at Count 2 for delivery of methamphetamine on November 3rd. Commonwealth Exhibit #17 was another alleged conversation between Appellant and the C.I. referencing the "G" and "2 BGS." Ms. Iraca told the jury that the purpose of the electronic contact was because the Appellant had methamphetamine available. She again identified pictures from her cell phone taken by Sgt. Moser at the time of the controlled buy, documenting communications between her and the Appellant. She testified that she spoke to the Appellant on the phone in the presence of the police and that they exchanged electronic messages. She identified a message where she said "the same as the last time, then" to the Appellant about arranging a drug transaction for a gram. Appellant and the C.I. go on to discuss where the Appellant is located and the purchase of a gram of methamphetamine and two bags of heroin. (T.T. 10/20/21 p. 136-139). She is directed to a location by the Appellant and gives him $190 for one gram of methamphetamine and two bags of heroin. (T.T. 10/20/21 p. 141- 143, 146). Sgt. Moser was qualified as an expert witness in narcotics investigations (T.T. 10/20/21 p. 42, 44). He testified that he took photographs of the C.I.s phone and the communications between the CI and Appellant. He identified the conversation occurring over Facebook (T.T. 10/21/21 p. 106-107). Sgt. Moser told the jury that based upon his training and experience, the G

9

referred to a gram and the 2 BGS meant bags of heroin (T.T. 10/21/21 p. 107). As it relates these communications, the Jury convicted the Defendant of delivery of methamphetamine and fentanyl on November 6th.

This Court believes that the defense argument may be based upon the testimony of the C.I. about text messages between the Appellant and her discussing "clothes". These references have common meanings in addition to any illicit or ulterior meaning attributed to them by the C.I. and Sgt. Moser. However, this defense argument completely ignores the conversations detailed previously.

Because the Commonwealth charged and alleged a continuing count of Criminal Use of a Communication Facility, it was not necessary for the Jury to determine if each text the Commonwealth presented throughout its case arose to the commission of the crime. It was only necessary for the Jury to believe that at least on one occasion the Appellant had used a communication device to facilitate a delivery of drugs. According to the verdict slip, the Jury concluded that at least on two occasions (November 3rd and November 6th) the Appellant had arranged for the deliveries of drugs to the C.I. The afore-listed examples of electronic communications are sufficient evidence for the Jury to find beyond a reasonable doubt that Appellant possessed sufficient mens rea to be guilty of Criminal Use of a Communication Facility. Based upon the above evidence and the reasonable inferences from that evidence, the jury reasonably properly concluded that the Appellant had the mens rea of intentionally, knowingly, or recklessly using a communication device to arrange deliveries of controlled substances.

II.     **The aggregate sentence imposed was in accordance with the law and within the court's discretion**

In the Statement of Errors, the Defense alleges as follows:

Pennsylvania law makes clear that a minimum sentence serves as a guide to the earliest potential release date. The punishment imposed is the maximum period of confinement. The Commonwealth sought a sentence of 11.25 to 25 years' imprisonment, and the Court imposed a sentence of 10 to 42 years. In doing so, the Court expressed that it was "deviating" from the Commonwealth's recommendation, and it believed the sentence to be "appropriate" in relation to the Appellant's charged co-conspirator, who received 15 to 30 years' imprisonment but "who had a much larger role in the distribution of methamphetamine." The Court, therefore, sentenced with a focus to the minimum sentence imposed, believing it was imposing a more lenient sentence, one "with a long tail of parole." The Court's consecutive sentencing scheme, however, was incongruent with the conduct of conviction – *a mere* two drug deliveries resulting in the distribution of *7.8 grams of methamphetamine and 4.08 grams of fentanyl.* (Emphasis added)

Consequently, was the Court's sentence "unduly harsh," excessive, and unreasonable?

Under Pennsylvania Law, the sentencing Court is vested with sound discretion to render judgment and this judgment will not be disturbed absent an abuse of discretion. *Commonwealth v. Sharp, 792 A.2d 1266, 1268 (Pa. Super. 2002).* However, an abuse of discretion is more than just an error in judgment. *Commonwealth v. Jordan, 125 A.2d 55, 71 (Pa. Super. 2015).* Such abuse of discretion will only be found if the judgment was "manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will." *Id.* This discretion allows the sentencing judge to sentence up to and including the maximum sentence authorized by statute; the only line that a sentence may not cross is the statutory maximum sentence. *Commonwealth v. Gordon, 942 A.2d 174, 182 (Pa. 2007).*

11

Pennsylvania law requires that the sentence court "make as part of the record and disclose in open court at the time of the sentencing, a statement of the reason or reasons for the sentence imposed". *42 Pa.C.S.A. §9712(b)*. "Indeed, in fashioning sentence, a judge is obligated to follow the general principle that the sentence imposed should call for confinement consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the Defendant." *Commonwealth v Monahan, 860 A.2d 180, 184 (Pa. Super. 2004).*

Section 9725 of Title 18 states:

The court shall impose a sentence of total confinement if, having regard to the nature and circumstance of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:
(1) There is undue risk that during a period of probation or partial confinement the defendant will commit another crime;
(2) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will depreciate the seriousness of the crime of the defendant.

The Court is satisfied that it followed the statutory sentencing requirements of the Judicial Code and the mandates of Pennsylvania law. The Defendant was given a middle of the standard range sentence on each count with a long tail of parole. The Appellant was provided notice of why and how the Court was fashioning his sentence at the time of the sentencing hearing[3] and also referenced those considerations in the sentencing Order of January 11, 2021. This Jurist readily acknowledged at the

---

[3] This Court incorporates by reference herein the full sentencing transcript.

12

sentencing hearing and in the sentencing Order that the Pre-Sentence Investigation (PSI), as corrected, was considered and made part of the record, as was all, the mitigating information offered for the Defendant. (Sentencing Transcript 1/11/22, p. 7-9 and the sentencing order dated January 11, 2021 incorporated by reference hereto as though set forth at length herein). The Undersigned disagrees that with the defense framing of the issue as an unduly harsh sentence for "a *mere* two drug deliveries resulting in the distribution of *7.8 grams of methamphetamine and 4.08 grams of fentanyl.* (emphasis added) when the entirety of the facts and circumstances of the record are considered, along with the Appellant's history, as well as the Court's mandate to fashion an individualized sentence upon the Appellant.

The evidence of Appellant's record/history was clear and referenced by the Court at the proceeding, as contained in the PSI. The Defendant's criminal history spans since he was 16 years of age. Per the PSI, Appellant had 9 confinements, 18 prior adult arrests, 3 juvenile arrests (with 2 adjudications), 15 convictions, 8 paroles granted, 3 paroles revoked, 3 paroles denied, 7 prior probations (with 2 revocations). The Appellant's poor history was cited by the Court as a basis for the sentencing scheme. "He has a poor supervision history with numerous arrest, revocations, technical violations on almost a yearly basis since 2009. These arrests include misdemeanors and felonies and some weapon violation offenses." (1/11/22 Order p. 7). The Court cited that one of the offenses involved a weapon while incarcerated. "The Court believes a consecutive sentence is necessary for each of these crimes... in light of his prior poor supervision and prior history of opportunities for rehabilitation... The Court

recognizes the Defendant's failure to avail himself of rehabilitation while providing community protection is the purpose of this sentence." (1/11/22/ Order, p. 8).

The need to protect society is supported by the record of the proceedings and the information within the PSI. The Court referenced the record of the proceedings when considering the appropriate sentence. (1/11/22 Order p. 8). The record at trial established that the Defendant knew he was dealing in dangerous substances. Knowing that the CI did not use heroin, Appellant arranged for the C.I. to purchase heroin and told the C.I. during the November 6th drug delivery that she should advise her customers to make sure to be careful because that was "the stuff that was killing people." (T.T. 10/21/21 p. 143, l. 13-16). The Jury learned that the substance sold, as heroin, by the Appellant to the C.I. on November 6th, was confirmed to be fentanyl upon forensic examination. Yet, despite the Appellant holding the drug out as heroin, he understood the lethality.

When discussing the rehabilitative aspects of sentencing for Appellant, it is clear from the record that the nature and type of rehabilitation is not the same for him as for those who are addicted to drugs. The rehabilitative needs of this Appellant are criminogenic. There was no evidence to show that Appellant is a drug user. It is reasonable to infer from the evidence that he was a businessman and used the C.I., who are struggling with drug addictions, to make money. He also understood the financial benefit to be made by selling drugs because he told the C.I. to cut it [heroin] up to make more money. (T.T. 10/21/21 p. 143, l. 13-16).

His motivations for engaging in criminal behavior in light of his supervision history and the deadliness of one of the drugs he sold are factors when evaluating the need to

14

protect society and thus, whether the Appellant should have received a long period of supervision and whether he should receive concurrent or consecutive sentences. Under these circumstances and considering the history of the Appellant, the sentence imposed appropriately addresses the need to protect the public for an extended period of time (with oversight by a parole officer) from the Appellant, a businessman, peddling dangerous substances with the sole selfish motivation to make money.

With regard to the imposition of consecutive sentences, the Pennsylvania Superior Court has stated:

[T]he imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentence in court. Longstanding precedent of this court recognizes that 42 Pa.C. S. A. § 9721 affords the sentencing court discretion to impose its sentence concurrently for consecutively to other sentences being imposed at the same time or to sentences already imposed. A challenge to the imposition of a consecutive rather than a concurrent sentence does not present a substantial question regarding the discretionary aspects of sentence. We see no reason why [a defendant] should be afforded a volume discount for his crimes by having all sentences run concurrently. However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that may create a substantial question. When determining whether it substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears to be its face to be an excessive level in light

15

of the criminal conduct in the case. *Commonwealth v. Zirkle, 107 A.3d 127, 132 (Pa.Super. 2014) (citations omitted).*

In the case before this Court, the evidence established and the jury convicted Appellant of delivering/selling quantities of methamphetamine on more than one occasion and also of delivering/selling fentanyl. Methamphetamine is a dangerous substance and of course, the lethality of fentanyl is well known. Based upon the testimony of record, he was aware that the Commonwealth's witness struggled with addiction. He had numerous convictions over years and ignored opportunities to change his criminal behavior. While the Appellant was performing at work, this behavior coincided with his bail for the current charges. Furthermore, even considering the Appellant alleged connection to his children and the other mitigation evidence presented, Appellant engaged in selling drugs, per the Jury verdicts. The Appellant failed to adhere to appropriate behavior on previous periods of supervision with criminal conduct spanning the prior 16 years. This Court, like the *Zirkle* court, found no reason to give the Defendant a volume discount in his sentencing scheme and said so. (1/11/22 Order, p. 8).

The Court imposed an individualized sentence, taking into account the entirety of the record, the Defendant's history, rehabilitative needs, contents of the pre-sentence investigation, mitigation information, punishment and the need to protect society. The sentence was not manifestly excessive, "unduly harsh," or an abuse of discretion.

16

## CONCLUSION

Accordingly, based upon the record and the applicable law, the Undersigned respectfully requests the Honorable Superior Court determine the appeal is without merit and deny and dismiss the appeal.

Respectfully submitted,

J.